No. 13-2181

# United States Court of Appeals for the First Circuit

WILLIAM M. MCDERMOTT
Plaintiff-Appellant

v.

MARCUS, ERRICO, EMMER AND BROOKS, P.C.
Defendant-Appellee

ON APPEAL FROM A JUDGMENT OF THE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

## BRIEF FOR THE DEFENDANT - APPELLEE, MARCUS, ERRICO, EMMER AND BROOKS, P.C.

STEPHEN J. DUGGAN, BAR #34652
LYNCH & LYNCH
45 Bristol Drive
South Easton, Massachusetts 02375
(508) 230-2500
sduggan@lynchlynch.com

EDMUND A. ALLCOCK, BAR #1048804
MARCUS, ERRICO, EMMER & BROOKS, P.C.
45 Braintree Hill Office Park, Suite 107
Braintree, Massachusetts 02184
(781) 843-5000
eallcock@meeb.com

Dated: December 23, 2013

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Marcus, Errico, Emmer & Brooks, P.C., states that it is a Massachusetts professional corporation and that no parent corporation or any publicly held corporation owns 10% or more of its stock.

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ..........................................................i

TABLE OF AUTHORITIES ..............................................................................iv

STATEMENT OF THE ISSUES...........................................................................1

STATEMENT OF THE CASE...............................................................................1

STATEMENT OF THE FACTS ............................................................................3

SUMMARY OF ARGUMENT ............................................................................8

STANDARD OF REVIEW ...............................................................................10

ARGUMENT ...................................................................................................11

    I.    THE DISTRICT COURT PROPERLY DETERMINED THAT
        VIOLATIONS OF THE FDCPA DO NOT CONSTITUTE
        PER SE VIOLATIONS OF M.G.L. c. 93A WHERE THE
        PARTIES ARE NOT ENGAGED IN TRADE OR
        COMMERCE. ...................................................................................11

            A.    No finding of liability under M.G.L. c. 93A could be
                    made absent a demonstration by the Plaintiff that MEEB
                    was engaged in "trade or commerce" with regard to its
                    dealings with the Plaintiff. ........................................................11

            B.    The lower court's finding that MEEB was not engaged in
                    "trade or commerce" with regard to its dealings with the
                    Plaintiff McDermott was not clearly erroneous. ......................15

            C.    Even had MEEB engaged in trade or commerce with the
                    Plaintiff, untimely violations of the FDCPA cannot serve
                    as per se violations of M.G.L. c. 93A. ......................................20

II.    THE PLAINTIFF, HAVING FAILED TO ESTABLISH HIS
THEORY OF THE CASE AT TRIAL THAT MEEB
INTENTIONALLY ESCALATED ITS FEES WITH REGARD
TO ITS REPRESENTATION OF ITS CLIENT, CANNOT
ARGUE FOR THE FIRST TIME ON APPEAL THAT MEEB
VIOLATED 15 U.S.C. §1692f BY ALLEGEDLY
"CHARGING AND COLLECTING EXCESSIVE,
REDUNDANT, OR OTHERWISE UNNECESSARY
ATTORNEY'S FEES AND COSTS . . . NOT PERMITTED
BY MASSACHUSETTS LAW." ......................................................25

    A.    The Plaintiff has waived, by raising for the first time on
          appeal, his argument that MEEB violated 15 U.S.C
          §1692f  by "charging and collecting excessive,
          redundant, or otherwise unnecessary attorney's fees and
          costs . . . not permitted by Massachusetts law." ......................25

    B.    The Plaintiff mischaracterizes the underlying claims and
          burden of proof relative to same. ...............................................28

    C.    M.G.L. c. 183A, §6(c) did not obligate MEEB to send
          any pre-suit notices to the Plaintiff's mortgagees and
          MEEB did not act in bad faith or in a manner intended to
          escalate its legal fees. ................................................................29

III.   THE PLAINTIFF FAILED TO ESTABLISH AN
INDEPENDENT VIOLATION OF M.G.L. c. 93A, §9 ON
THE PART OF MEEB AND THE LOWER COURT
PROPERLY DETERMINED THAT MEEB DID NOT
COMMIT ANY WILLFUL OR KNOWING VIOLATION OF
CHAPTER 93A. ...................................................................................32

    A.    MEEB enjoyed absolute immunity with regard to the
          Plaintiff's state law claims pursuant to c. 93A. ......................32

    B.    There was ample support in the record for the court's
          determination that MEEB did not commit an unfair or
          deceptive act...............................................................................34

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASES:**

Abraham v. American Home Mortgage Servicing, Inc.,
  2012 WL, 4482236 (D.Mass. 2012)............................................................36

Akar v. Harmon Law Offices,
  843 F.Supp.2d 154 (2012) .................................................................. 17-18

American Shooting Sports Council, Inc. v Attorney General,
  429 Mass. 871, 711 N.E.2d 899 (1999).........................................................14

Arthur D. Little, Inc. v. East Cambridge Sav. Bank,
  35 Mass.App.Ct. 734, 625 N.E.2d 1383 (1984)...........................................19

Baker v. Allstate Fin. Servs., Inc.,
  554 F.Supp.2d 945 (D.Minn. 2008) .............................................................27

Berish v. Bornstein,
  437 Mass. 252, 770 N.E.2d 961 (2002).........................................................16

Blanchette v. Cataldo,
  734 F.2d 869 (1st Cir. 1984)..........................................................................33

Carman v. CBE Group, Inc.,
  782 F.Supp.2d 1223 (D.Kan. 2011) .............................................................27

Christopher v. First Mutual Corp.,
  2008 WL 1815300 (E.D. Pa. 2008)...............................................................24

Cochran v. Quest Software, Inc.,
  328 F.3d 1 (1st Cir. 2003)..............................................................................27

Computer Systems Engineering, Inc. v. Quentel Corp.,
  571 F.Supp. 1365 (D.Mass. 1983).................................................................36

Continental Ins. Co. v. Bahnan,
  216 F.3d 150 (1st Cir. 2000)..........................................................................12

Correlas v. Viveiros,
    410 Mass. 314, 572 N.E.2d 7 (1991)...............................................................33

Couvertier v. Gil Bonar,
    173 F.3d 450 (1st Cir. 1999)........................................................................30

Cumpiano v. Banco Santander P.R.,
    902 F.2d 148 (1st Cir. 1990)........................................................................10

Darviris v. Petros,
    442 Mass. 274, 812 N.E.2d 1188 (2004).......................................................14

Doe v. Nutter, McClennen & Fish,
    41 Mass.App.Ct. 137, 668 N.E.2d 1329 (1996).............................................33

Duclersaint v. Federal National Mortgage Association,
    427 Mass. 809, 696 N.E.2d 536 (1998).........................................................35

Enica v. Principi,
    544 F.3d 328 (1st Cir. 2008)........................................................................29

Feeney v. Dell Inc.,
    454 Mass. 192, 908 N.E.2d 753 (2009)....................................................11, 15

First Enterprises Ltd. v. Cooper,
    425 Mass. 344, 680 N.E.2d 1163 (1997)........................................... 15, 18-19

Frazier v. Bailey,
    957 F.2d 920 (1st Cir. 1992)........................................................................34

Garcia v. Wachovia Mtg. Corp.,
    676 F.Supp.2d 895 (C.D. Cal. 2009)............................................................23

Harrington v. CACV of Colorado, LLC,
    508 F.Supp.2d 128 (D.Mass. 2007)..............................................................28

Heller Financial v. Ins. Co. of N.A.,
    410 Mass. 400, 573 N.E.2d 8 (1991).............................................................35

Heller v. Silverbranch Const. Corp.,
        376 Mass. 621, 382 N.E.2d 1065 (1978)......................................................37

In Re: Mona Lisa v. Celebration, LLC,
        472 B.R. 582 (Bkrptcy. M.D. Fla. 2012)................................................. 21-22

Incase Inc. v. Timex Corp.,
        488 F.3d 46 (1st Cir. 2007)...........................................................................34

InterGen N.V. v. Grina,
        344 F.3d 134 (1st Cir.2003)..........................................................................20

John Boyd Co. v. Boston Gas Co.,
        775 F.Supp. 435 (D.Mass. 1991)...................................................................13

Jordan v. Paul Financial, LLC,
        745 F.Supp.2d 1084 (N.D. Cal. 2010)...........................................................23

Klairmont v. Gainsboro Restaurant, Inc.,
        465 Mass. 165, 987 N.E.2d 1247 (2013).......................................................13

Kotek v. Homecomings Financial, LLC,
        2009 WL 2057046 (W.D. Wash. 2009) .........................................................24

KPS & Associates, Inc. v. Designs by FMC, Inc.,
        318 F.3d 1 (1st Cir. 2003).............................................................................35

Kunelius v. Town of Stowe,
        588 F.3d 1 (1st Cir. 2009)..............................................................................15

Kurker v. Hill,
        44 Mass.App.Ct. 184, 689 N.E.2d 833 (1998)..............................................19

L.B. Corp. v. Schweiter-Mauduit Intl., Inc.,
        121 F.Supp.2d 147 (D.Mass. 2000)...............................................................13

Lantner v. Carson,
        374 Mass. 606, 373 N.E.2d 973 (1978).........................................................13

LeBlanc v. Unifund CCR Partners,
    601 F.3d 1185 (11th Cir. 2010) ......................................................31

Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v.
    U.S. Fire Ins. Co., 639 So.2d 606 (Fla. 1994) ...............................33

Lyons v. Homecomings Financial, LLC,
    770 F.Supp.2d 1163 (W.D. Wash. 2011) ................................. 22-23

Miller v. Mooney,
    431 Mass. 57, 725 N.E.2d 545 (2000)............................................15

Morrison v. Toys "R" Us, Inc.,
    441 Mass. 451, 806 N.E.2d 388 (2004)................................... 34-35

Parisi by Cooney v. Chater,
    69 F.3d 614 (1st Cir. 1995)............................................................30

Peabody N.E., Inc. v. Town of Marshfield,
    426 Mass. 436, 689 N.E.2d 774 (1998)...................................12, 16

Rich v. Rich,
    2011 WL 3672059 (Mass.Super. 2011) .........................................33

Rizzo v. Pierce & Associates,
    351 F.3d 791 (7th Cir. 2003) .........................................................32

Rosal v. First Federal Bank of California,
    671 F.Supp.2d 1111 (N.D. Cal. 2009)............................................23

Schwanbek v. Federal-Mogul Corp.,
    31 Mass.App.Ct. 390, 578 N.E.2d 789 (1991), rev'd on other grounds,
    412 Mass. 703, 592 N.E.2d 1289 (1992).......................................34

Smith v. F.W. Morse & Co., Inc.,
    76 F.3d 413 (1st Cir. 1996)............................................................10

Society of Jesus of New England v. Boston Landmarks Com'n,
    411 Mass. 754, 585 N.E.2d 326 (1992).........................................28

Sriberg v. Raymond,
　　370 Mass. 105, 345 N.E.2d 882 (1976)..........................................................33

St. Paul Fire and Marine Ins. Co. v. Ellis & Ellis,
　　262 F.3d 53 (1st Cir. 2001)................................................................12, 13, 19

Taylor v. Heath W. Williams, L.L.C.,
　　510 F.Supp.2d 1206 (N.D.Ga. 2007)....................................................... 27-28

Tetrault v. Mahoney, Hawkes & Goldings,
　　425 Mass. 456, 681 N.E.2d 1189 (1997)......................................................15

Theran v. Rokoff,
　　413 Mass. 590, 602 N.E.2d 191 (1992)........................................................33

Tomaselli v. Beaulieu, Civil Action,
　　No. 08-CV-10666-PBS, 2010 WL 2105347 (D.Mass. May 7, 2010)...........15

United States v. 15 Bosworth Street,
　　236 F.3d 50 (1st Cir. 2001)...........................................................................10

United States v. Cabrera-Polo,
　　376 F.3d 29 (1st Cir. 2004)...........................................................................20

United States v. Nivica,
　　887 F.2d 1110 (1st Cir.1989)........................................................................20

United States v. Slade,
　　980 F.2d 27 (1st Cir. 1992)...........................................................................27

Visnick v. Caulfield,
　　73 Mass.App.Ct. 809, 901 N.E.2d 1261 (2009).............................................34

VMark Software v. GMC Corp.,
　　37 Mass.App.Ct. 610, 642 N.E.2d 587 (1994)..............................................36

Wasserman v. Agnastopoulos,
　　22 Mass.App.Ct. 672, 497 N.E.2d 19 (1986)................................................36

**STATUTES:**

15 U.S.C. §1692.......................................................................................1

15 U.S.C. §1692f..........................................................1, 25, 31, 32

15 U.S.C. §1692i.......................................................................................3

15 U.S.C. §1692k(d) ..............................................................2, 20


M.G.L. c. 93A ...............................................................................*passim*

M.G.L. c. 93A, §2 ...................................................... 1, 11-12, 35

M.G.L. c. 93A, §2(a)....................................................11, 12, 14

M.G.L. c. 93A, §9 .............................................................................32

M.G.L. c. 93A, §9(3) .......................................................................37

M.G.L. c. 183A ................................................................4, 18, 36

M.G.L. c. 183A, §4(5) ..............................................................30, 31

M.G.L. c. 183A, §5 .............................................................................19

M.G.L. c. 183A, §6 ................................................................4, 19, 29

M.G.L. c. 183A, §6(a)(ii).............................................................4, 5

M.G.L. c. 183, §6(c)...............................................6, 29, 30, 31

**REGULATIONS:**

940 Code Mass. Regs. §3.16....................................................11, 13, 14

## <u>STATEMENT OF THE ISSUES</u>

I.     Whether the lower court properly determined that the FDCPA violations, most of which were untimely, did not constitute per se violations of M.G.L. c. 93A where the parties were not engaged in "trade or commerce."

II.     Whether the Plaintiff, having failed to establish his theory of the case at trial that MEEB intentionally escaled its fees, can argue for the first time on appeal that MEEB violated 15 U.S.C. §1692f, by allegedly charging and collecting excessive, redundant, or otherwise unnecessary fees and costs not permitted by law and that MEEB bore the burden of proof relative to same.

III.     Whether the lower court's determination that MEEB did not commit any willful or knowing violation of M.G.L. c. 93A, §2 was clearly erroneous.

## <u>STATEMENT OF THE CASE</u>

The Plaintiff William M. McDermott filed this action alleging improper debt collection activities against Marcus, Errico, Emmer & Brooks, P.C. ("MEEB"), a professional corporation of attorneys located in Braintree, Massachusetts. The Plaintiff's Verified Complaint alleged violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §1692 (Count I), and Massachusetts General Laws Chapter 93A (Count II). Appendix ("App.") 58-71. The underlying dispute involved "MEEB's efforts . . . to collect condominium, loan payback and late fees as well as attorney's fees from plaintiff on behalf of MEEB's client, the Pondview

Condominium Trust."  Addendum to Plaintiff-Appellant's Brief ("Addendum") 1.

The Verified Complaint alleged in excess of 155 claimed violations of the FDCPA,

encompassing a period of time from approximately 2004 through approximately

August 2008.  App. 58-71.  MEEB filed an Amended Answer to the Verified

Complaint on October 20, 2010.  App. 5.

A bench trial was conducted before Magistrate Judge Marianne B. Bowler

on January 25, 2011, January 26, 2011, January 31, 2011, February 1, 2011,

February 3, 2011, and February 7, 2011.  App. 9-10.  On November 20, 2012, the

court (Bowler, M.J.) entered its Memorandum and Order, awarding the Plaintiff

$800.00 in damages under Count I and $10,400.00 in damages under Count II.

Addendum 203.  The award pursuant to c. 93A was based largely upon "untimely

[per se] FDCPA violations," as the one year statute of limitations for FDCPA

claims extinguished any claims based on conduct occurring prior to February 3,

2008.  Addendum 68, 179.  See 15 U.S.C. §1692k(d) (action to enforce liability

under FDCPA must be brought "within one year from the date on which the

violation occurs").  The court noted that "there was no unfair or deceptive conduct

with respect to the timely FDCPA conduct or an independent violation of chapter

93A outside the context of the per se liability based on the untimely FDCPA

violations."  Addendum 216.  Final judgment entered on November 20, 2012.

App. 17.

Following the trial, both parties filed Rule 59 Motions.  Following a hearing, the District Court amended its judgment in part, determining that MEEB was not liable under Chapter 93A (due to the fact that MEEB did not engage in "trade or commerce" with the Plaintiff) or Section 1692i and vacated that portion of its Judgment, but ordered that the Plaintiff remained entitled to $800.00 in statutory damages under Count I (FDCPA) but that the Plaintiff was not entitled to relief under Count II (M.G.L. c. 93A). App. 15-16.  The Plaintiff filed a notice of appeal on September 23, 2013.  App. 57.

## STATEMENT OF THE FACTS

The Plaintiff owned two units (Units 104 and 105) at the Pondview Condominiums in Lynn, Massachusetts.  Created under a September 1986 Declaration of Trust, Pondview Condominium Trust is the governing body of the Pondview Condominiums.  Exhibits ("Exs.")  561-585.  The Declaration of Trust provided the trustees with the authority to determine the assessment for each fiscal year and the unit owners' "respective shares of such assessment, according to their percentages of interest in the common areas and facilities."  Exs. 569-571.  The Declaration of Trust provided for monthly payment of the assessment by the unit owners and, "[i]f not paid when due, the amount . . . shall constitute a lien on the unit."  Id.  The Master Deed for the Pondview Condominiums similarly provided:

> The Trustees in their discretion may enforce collection of unpaid assessments for common expenses plus interest thereof by enforcing the lien by a court action or by other lawful means on account of which there shall be added to the amount due and payable the reasonable costs of such collection including reasonable attorney fees.

Exs. 589-608.  The Master Deed further submitted Pondview Condominium  to the

"provisions of  Chapter 183A," the Massachusetts condominium statute.  Exs. 589.

The Declaration of Trust similarly granted the trustees the power "to exercise all of

the powers of the 'organization of unit owners' pursuant to Massachusetts General

Laws, Chapter 183A."  Exs. 564-566.  Under Section 6 of Chapter 183A,  the

"organization of unit owners may . . . assess any fees, attorneys' fees [and] late

charges . . . against the unit owner."  M.G.L. c. 183A, §6(a)(ii).  As such,

Pondview had the ability and authority to assess condominium fees, attorneys'

fees, late charges, and costs of collection against unit owners such as the Plaintiff.

Addendum 209.

In July and August 2004, the Plaintiff failed to timely pay the condominium

fees, late fees, and loan payback charges for the two units.  App. 461.

Commencing in March 2005, MEEB represented Pondview in its efforts to collect

unpaid condominium assessments and expenses from the Plaintiff.  App. 381-386,

389.  MEEB was advised by its client, Pondview, that the Plaintiff McDermott's

condominium fees were unpaid and that McDermott was refusing to make

payment.  App. 386.  Pursuant to Chapter 183A, a condominium association such

4

as Pondview obtains a lien for any legal fees and expenses in connection with collecting unpaid condominium fees and has the right to charge same to the unit owner.  App. 408.

 While the theory of McDermott's Verified Complaint in this case was that MEEB effected an "unreasonable, unfair, unlawful, unexplained, and retroactive change" in Pondview's late fee policy "for the specific purpose of precipitating a dispute with McDermott in order to generate legal fees for [MEEB] to be paid by McDermott which would be secured by his condominium units," see App. 61, Richard Brooks, Esq. of MEEB testified that MEEB had no input into Pondview's late fee charge, or policy relative to same, and the lower court specifically found that "MEEB was not involved in the decision to impose a $25.00 charge for delinquent loan payback charges or to change any policy to impose late fees." App. 61, 382; Addendum 10.  Although Pondview had the ability and authority to impose late fees as it did, M.G.L. c. 183A, § 6(a)(ii), the "Plaintiff did not agree with the fees and refused to pay them."  Addendum 10.  As found by the lower court, the "Plaintiff's unilateral decision not to pay these late fees led to Pondview's decision to file suit."  Addendum 12.  On April 28, 2005, MEEB, on behalf of Pondview, filed the first and second of a number of lawsuits against the Plaintiff to collect delinquent fees.  App. 159-160; Addendum 19; Exs. 15-16.

Attorney Brooks testified that pursuant to the Massachusetts Condominium Act, Pondview enjoyed a "super" or "priority" lien for six months' worth of condominium fees, plus legal fees and costs. App. 375-378. Attorney Brooks further testified that it was MEEB's practice to file successive lawsuits to secure additional six month "super" or "priority" liens and to address accruing and ongoing unpaid fees and assessments. App. 153-155. According to Attorney Brooks, MEEB was required to file multiple lawsuits on behalf of Pondview due to the Plaintiff McDermott's failure to make payment relative to assessments accruing after the filing of earlier suits. App. 407.

In circumstances where a first mortgagee on a condominium unit "has informed the organization of unit owners of its name and mailing address," the Massachusetts condominium statute requires that a notice be sent to the mortgagee 30 days prior to filing suit. M.G.L. c. 183A, §6(c). See App. 138. The court found that, under the facts, McDermott's first mortgagees "did not apprise Pondview of their names and mailing addresses." Addendum 139. As determined by the court, "MEEB's pattern of sending the 30 day notice of intent to file suit in and around the time MEEB filed suit was therefore not intended to escalate its legal fees" and that "it was based on a reading of the statute that the language supports." Addendum 139. The court also found that Attorney Brooks "convincingly testified that MEEB was attempting to resolve the matter and

therefore waited to send out the notice to avoid additional legal fees."  Addendum

138.  See App. 157.

Pondview ultimately obtained judgments totaling $45,334.30 and MEEB

received $55,581.20 in attorney's fees relative to its representation of Pondview.

App. 349-350; Addendum 60.  The Verified Complaint alleged that MEEB's fees

"were directly caused by its deliberate, intentional provocation of a dispute

between Pondview and McDermott over $150.00 in unlawful late fees. . . ."

App. 69.  The court repeatedly rejected the Plaintiff McDermott's assertion in this

regard, specifically finding that MEEB had no involvement in the alleged

"retroactive change" in Pondview's late fee policy, and found that MEEB acted in

good faith and did not act in a manner to intentionally escalate its legal fees.  See,

e.g., Addendum 138-139, 195 ("Plaintiff nevertheless repeatedly argues that

MEEB acted in bad faith.  According to Plaintiff, MEEB engaged in intentional

and deliberate conduct all designed to escalate its legal fees. . . .  The facts do not

support an egregious or intentional escalation of legal fees.").  On repeated

occasions, the court found that at no time did MEEB act in a manner, either

intentionally or carelessly, to escalate its fees.  See, e.g., Addendum 31, 35, 42, 43,

45, 50, 52, 153.  The court specifically found that "any alleged independent

Chapter 93A violation based upon MEEB's bad faith conduct of escalating its legal

fees is not supported by the facts and lacks merit."  Addendum 198.

## SUMMARY OF ARGUMENT

The District Court properly determined that MEEB, whose only involvement in the underlying matter was as counsel for Pondview, McDermott's adversary, did not engage in "trade or commerce," a necessary predicate for liability pursuant to M.G.L. c. 93A, with McDermott, and, as such, could not be found to have violated the Massachusetts Consumer Protection Act.  McDermott and MEEB's relationship was that of litigation adversaries on opposite sides of a private dispute arising out of McDermott's failure to timely pay condominium common expenses assessments.  Even if MEEB had been found to have acted in a "business context" with McDermott, McDermott failed to identify any independent c. 93A violation on the part of MEEB and could not rely upon time-barred alleged FDCPA violations as the necessary predicate acts under M.G.L. c. 93A.

The District Court did not err in rejecting McDermott's theory of liability at trial that MEEB acted in bad faith and intentionally escalated its fees with regard to its representation of Pondview.  There was ample support for the District Court's finding that MEEB's motives "were based on the desire to represent its client to the fullest extent possible in a vigorous and aggressive manner" and that "MEEB's conduct was not threatening, oppressive or coercive, or otherwise unethical or unscrupulous."   Following the District Court's wholesale rejection of the Plaintiff's theory of the case, McDermott now attempts to argue for the first time

8

on appeal that MEEB violated the FDCPA by "[c]harging and collecting excessive, redundant, or otherwise unnecessary attorney's fees and costs . . . not permitted by Massachusetts law . . ." and by erroneously asserting that MEEB bore the burden of proof relative to same. McDermott's arguments in this regard, raised for the first time on appeal, provide no basis for disturbing the District Court's judgment.

It is undisputed that all of the challenged conduct on the part of MEEB occurred within the scope of MEEB's representation of Pondview and occurred preliminary to, and during the course of, litigation. All of the challenged conduct related to Pondview's collection efforts relative to the outstanding condominium common expense assessments. As such, the litigation privilege operates to provide MEEB with immunity relative to the asserted Chapter 93A violations.

Additionally, there is ample support in the record for the District Court's finding that "any alleged independent chapter 93A violation based upon MEEB's bad faith alleged conduct of escalating its legal fees is not supported by the facts and lacks merit." The District Court properly determined that there was no basis for finding a willful or knowing violation of Chapter 93A, given that the record evidence established that MEEB simply acted to enforce the statutory, and other, rights of its client.

There is no basis to disturb the judgment of the District Court and the judgment should be affirmed.

9

## <u>STANDARD OF REVIEW</u>

"Following a bench trial, the court of appeals reviews the trier's factual determinations for clear error . . . but affords plenary review to the trier's formulation of applicable legal rules."  <u>Smith v. F.W. Morse & Co., Inc.</u>, 76 F.3d 413, 420 (1st Cir. 1996).  "The jurisprudence of clear error constrains the [court of appeals] from deciding factual issues anew."  <u>Id.</u>  The reviewing court "may not disturb the district court's record-rooted findings of fact unless on the whole of the evidence [it] reach[es] the irresistible conclusion that a mistake has been made."  <u>Id.</u>, <u>citing</u> <u>Cumpiano v. Banco Santander P.R.</u>, 902 F.2d 148, 152 (1st Cir. 1990).

"This deferential standard extends not only to factual findings simpliciter but also to inferences drawn from the underlying facts."  <u>Smith</u>, 76 F.3d at 420.  "Similarly, findings regarding an actor's motivation fall within the shelter of Rule 52(a), and, therefore, if the trial court's reading of the record on such an issue is plausible, appellate review is at an end."  <u>Id.</u>  <u>See</u> <u>United States v. 15 Bosworth Street</u>, 236 F.3d 50, 53 (1st Cir. 2001) ("This deference comports with common sense:  a judge, sitting jury-waived, has the opportunity to see and hear the witnesses at first hand and to immerse himself in the nuances of proof.  Consequently, the appellate process ought to respect the trial judge's superior 'feel' for the case and his enhanced ability to weigh and evaluate conflicting

evidence."). <u>See</u>, <u>e.g.</u>, Addendum 116 (lower court notes the "plaintiff's demeanor and lack of credibility").

## ARGUMENT

I. **THE DISTRICT COURT PROPERLY DETERMINED THAT VIOLATIONS OF THE FDCPA DO NOT CONSTITUTE PER SE VIOLATIONS OF M.G.L. c. 93A WHERE THE PARTIES ARE NOT ENGAGED IN TRADE OR COMMERCE.**

A. **<u>No finding of liability under M.G.L. c. 93A could be made absent a demonstration by the Plaintiff that MEEB was engaged in "trade or commerce" with regard to its dealings with the Plaintiff.</u>**

The Massachusetts Consumer Protection Act "prohibits 'unfair or deceptive practices in the conduct of any trade or commerce.'" <u>Feeney v. Dell Inc.</u>, 454 Mass. 192, 212, 908 N.E.2d 753 (2009), <u>quoting</u> M.G.L. c. 93A, §2(a). Pursuant to the authority granted by Section 2(a) of the Consumer Protection Act, the Attorney General of the Commonwealth enacted 940 C.M.R. §3.16, which provides:

> Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of M.G.L. c. 93A, §2 if:
>
> (1) It is oppressive or otherwise unconscionable in any respect; or
>
> (2) Any person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction; or
>
> (3) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or

11

> any political subdivision thereof intended to provide the
> consumers of the Commonwealth protection; or
>
> (4)    It violates the Federal Trade Commission Act, the
> Federal Consumer Credit Protection Act or other Federal
> consumer protection statutes within the purview of
> M.G.L. c. 93A, §2.

It is paragraph 4 above that McDermott relies upon to urge this Court to convert the untimely FDCPA violations into "per se" 93A violations. In doing so, McDermott urges this Court to ignore the "business context" requirement of M.G.L. c. 93A. Even "per se" violations, based on violations of Federal statutes, must have been committed in some type of business context.

"Broadly stated, Chapter 93A was designed to force a more civilized behavior in the business world." <u>Continental Ins. Co. v. Bahnan</u>, 216 F.3d 150, 156 (1st Cir. 2000). As such, although Chapter 93A "provides a broad remedy, it is only directed at conduct that occurs in the course of trade or commerce." <u>St. Paul Fire and Marine Ins. Co. v. Ellis & Ellis</u>, 262 F.3d 53, 66 (1st Cir. 2001). The predicate to every Chapter 93A claim is trade or commerce. M.G.L. c. 93A prohibits "unfair or deceptive acts or practices **in the conduct of any trade or commerce**." <u>Peabody N.E., Inc. v. Town of Marshfield</u>, 426 Mass. 436, 439, 689 N.E.2d 774 (1998) (quoting M.G.L. ch. 93A, § 2(a)) (emphasis added). "A party is engaging in 'trade or commerce,' as required under c. 93A, when it acts in a

'business context.'" Id. (quoting Lantner v. Carson, 374 Mass. 606, 611, 373
N.E.2d 973 (1978).

The Consumer Protection Act "is intended to protect against unfair and
deceptive practices in trade, not unfair practices in general." L.B. Corp. v.
Schweiter-Mauduit Intl., Inc., 121 F.Supp.2d 147, 152 (D.Mass. 2000).  See John
Boyd Co. v. Boston Gas Co., 775 F.Supp. 435, 440 (D.Mass. 1991) (noting that
Supreme Judicial Court "has stressed the existence of some contractual or business
relationship between the parties as a precursor to liability under Chapter 93A").
"'[U]nfair deceptive acts or practices' therefore can only form the basis of a
ch. 93A claim if those acts 'are perpetrated in a business context.'" St. Paul Fire,
262 F.3d at 66, quoting Lantner, 374 Mass. 606, 373 N.E.2d at 977.

In Klairmont v. Gainsboro Restaurant, Inc., 465 Mass. 165, 174, 987 N.E.2d
1247 (2013), the Supreme Judicial Court held that 940 C.M.R. 3.16(3), which
contains language similar to 3.16(4), is subject to a predicate "trade or commerce"
determination.  The Court stated:

> Section 2(a) of c. 93A proscribes "unfair or deceptive acts or practices
> in the conduct of trade or commerce."  Although the language of 940
> Code Mass. Regs. §3.16(3) is unquestionably broad, by its terms it
> imposes the substantive limitation that the law or regulation at issue
> must be intended to protect consumers, and we further read the
> regulation as being bounded by the scope of c. 93A, §2(a).  In other
> words, under 940 Code Mass. Regs. §3.16(3) a violation of a law or
> regulation, including a violation of the building code, will be a
> violation of c. 93A, §2(a), only if the conduct leading to the violation
> is both unfair or deceptive **and occurs in trade or commerce**.

13

Id. (emphasis supplied)(footnotes omitted).  Simply put, in Massachusetts, "per se"

93A violations based upon violations of other statutes, regulations or codes,

whether state or federal, may only constitute 93A violations if the predicate

activity or violation occurred in the conduct of trade or commerce.  In the event

940 C.M.R. 3.16(4) were interpreted in a manner which did not require that the act

occur in "trade or commerce," the regulation would conflict with the specific

requirements of M.G.L. c. 93A, §2(a).  See American Shooting Sports Council,

Inc. v Attorney General, 429 Mass. 871, 875-876, 711 N.E.2d 899 (1999)

(Attorney General "cannot regulate in a way which conflicts with legislation").

See also Darviris v. Petros, 442 Mass. 274, 281-282, 812 N.E.2d 1188 (2004).  As

explained in greater detail below, the predicate activity in this case was "litigation

activity", i.e., lawyer vs. opposing party, which does not constitute trade or

commerce sufficient to impose any kind of 93A liability on MEEB, whether by

"per se" violation or otherwise.

In light of the foregoing, the District Court correctly determined that liability

pursuant to M.G.L. c. 93A could not lie absent a finding that MEEB was engaged

in trade or commerce under Section 2(a).  Accordingly, the District Court's

Judgment should be affirmed.

14

**B.**    **The lower court's finding that MEEB was not engaged in "trade or commerce" with regard to its dealings with the Plaintiff McDermott was not clearly erroneous.**

The Massachusetts Supreme Judicial Court has indicated "that the proper party to assert a c. 93A claim against an attorney is a client or someone acting on a client's behalf." Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 462, 681 N.E.2d 1189 (1997). Additionally, "for an attorney to be liable under G.L. c. 93A, he or she must have been acting in a business context." Id. at 463, citing First Enterprises Ltd. v. Cooper, 425 Mass. 344, 347, 680 N.E.2d 1163 (1997). Where an attorney was not engaged in trade or commerce with the plaintiff, there can be no recovery under c. 93A. Tetrault, 425 Mass. at 463. See Miller v. Mooney, 431 Mass. 57, 64, 725 N.E.2d 545 (2000) ("As nonclients they must show that the defendant was acting in a business context."). "Chapter 93A claims can be brought against an attorney or a law firm," but only when the attorney or law firm is "acting in a business context *vis-a-vis* the plaintiffs." Tomaselli v. Beaulieu, Civil Action No. 08–CV–10666–PBS, 2010 WL 2105347, at *8 (D.Mass. May 7, 2010) (slip op.).

"Whether a party is engaged in trade or commerce is a question of fact." Kunelius v. Town of Stowe, 588 F.3d 1, 16 (1st Cir. 2009), citing Feeney, 908 N.E.2d at 770. In determining whether a party is engaging in trade or commerce by acting in a business context, the Court reviews a number of factors including

15

"the nature of the transaction, the character of the parties involved, and [their]

activities . . . and whether the transaction [was] motivated by business or personal

reasons."  Peabody N.E., Inc. v. Town of Marshfield, 426 Mass. 436, 689 N.E.2d

774, 778 n.6 (1998).

    It is undisputed that there was no relationship between McDermott and

MEEB – MEEB's only involvement in the underlying matter was as counsel to its

client, Pondview.  Nor was there any "transaction" between McDermott and

MEEB.  As found by the lower court, the "underlying dispute in the case at bar is a

private dispute between volunteer members of a condominium association and a

condominium owner to pay assessments and related charges."  Addendum 218.

See Berish v. Bornstein, 437 Mass. 252, 770 N.E.2d 961, 979 (2002) (M.G.L.

c. 93A "is inapplicable to a private dispute between a condominium unit owners'

association and a member of that association for failure to pay condominium

fees").[1]  "Pondview then hired MEEB to enforce this purely private transaction."

Addendum 219.  As such, the nature of the relationship between the Plaintiff and

MEEB was that of litigation adversaries (where MEEB was not a party but a law

firm representing its client in court) on opposite sides of a private dispute arising

---

[1] It would indeed be odd for a Court to find that the Pondview Condominium
Trust by operation of law is not engaged in trade or commerce vis a vis its attempts
to collect delinquent assessments from McDermott, but the law firm that it engaged
to enforce McDermott's delinquent obligations by filing a collection lawsuit is
somehow engaged in trade or commerce with McDermott.

out of the Plaintiff's failure to timely pay condominium common expense assessments.

Perhaps instructive, while this case was initially under advisement by the District Court, the District Court (Gorton, J.)[2] decided a very similar case. <u>Akar v. Harmon Law Offices</u>, 843 F.Supp.2d 154 (2012), involved FDCPA claims and Chapter 93A claims brought against Harmon based on Harmon's pursuit of a foreclosure action on behalf of its clients Fannie Mae and Wells Fargo. Harmon had sent letters preliminary to and during the foreclosure process and instituted foreclosure proceedings and had also defended claims asserted by Akar in the Massachusetts Land Court relative to the identity of the lawful holder of the mortgage instruments under assignment. While the District Court refused to dismiss the FDCPA claims, the Court did dismiss the 93A claims on the grounds that Harmon's interactions with Akar, which the Court likened to a "litigation opponent," did not constitute trade or commerce to bring the claim (including any per se FDCPA claims) under the umbrella of Chapter 93A. Specifically, Judge Gorton concluded:

> In the instant case, there was no business relationship between the plaintiffs and Harmon. Rather, "**the only contact between the parties was on opposing sides of a dispute" involving the foreclosure of Akar's Property by Harmon's client, Wells Fargo. "This 'interaction alone is insufficient to warrant a finding of a**

---

[2] Judge Gorton's Decision adopted an underlying report and recommendations of United States Magistrate Judge Dein.

**commercial relationship."**  Therefore, the plaintiffs have failed to state a claim against Harmon under Chapter 93A.  Id. at 171, citing and quoting Tomaselli v. Beaulieu, Civil Action No. 08–CV–10666–PBS, 2010 WL 2105347, at *8 (D.Mass. May 7, 2010) (slip op.) and Law Offices of Jeffrey S. Glassman v. Palmisciano, 690 F.Supp.2d 5, 19 (D.Mass.2009)(emphasis supplied).

Harmon's interactions with Akar are very similar (if not identical) to MEEB's actions with McDermott.  The activity in question is that MEEB sent statutory (under the Massachusetts Condominium Act, M.G.L. c. 183A) pre-litigation letters and then instituted proceedings against McDermott, just as Harmon did against Akar.  The only difference between Harmon and MEEB was the type of foreclosure action and proceeding (i.e., mortgage vs. condominium lien).   Activity by counsel on the opposing side of a litigation dispute does not and should not rise to the level of trade or commerce under G.L. c. 93A.  As found by the District Court, MEEB's statements and communications to the Plaintiff and his first mortgage holder[3] concerning the underlying dispute were made to serve the interest of MEEB's client, Pondview.  Cf. First Enterprises Ltd., 425 Mass. at 348, 680 N.E.2d at 1165 ("The defendant's statements were not made to influence an external marketplace but rather to secure for his client a lump-sum payment for his client's shares in the plaintiffs' business.").  Additionally, "the mere filing of litigation does not of itself constitute 'trade or commerce.'"  First Enterprises Ltd.,

---

[3] Pre-suit letters to McDermott's first mortgage holder are part of the condominium lien enforcement process mandated by the Massachusetts Condominium Act.  See M.G.L. c. 183A, §§ 5 and 6.

18

425 Mass. at 347, 680 N.E.2d at 1165, citing Arthur D. Little, Inc. v. East

Cambridge Sav. Bank, 35 Mass.App.Ct. 734, 743, 625 N.E.2d 1383 (1984).  See

Kurker v. Hill, 44 Mass.App.Ct. 184, 689 N.E.2d 833, 838 (1998) (minority

shareholder's claim against majority shareholders' attorneys properly dismissed as

the underlying matter was "principally a private grievance" and "internal business

dispute," which was outside the "conduct of any trade or commerce").  The only

relationship between the Plaintiff and MEEB involved MEEB's communications,

and subsequent filing of lawsuits, on behalf of its client relative to the Plaintiff's

failure to pay the delinquent condominium common expense assessments.  See St.

Paul Fire, 262 F.3d at 67 (distinguishing "vigorous advocacy in pursuit of" client's

legal claim and the use of litigation "to add a veneer of legitimacy to a fraudulent

scheme . . . [that] affects trade or commerce").

In light of the foregoing, the Trial Court's determination that MEEB was not

engaged "in trade or commerce" with McDermott should be affirmed.

**C.** **Even had MEEB engaged in trade or commerce with the Plaintiff, untimely violations of the FDCPA cannot serve as per se violations of M.G.L. c. 93A.**

Even if this Court finds that MEEB was engaged in trade or commerce with McDermott, this Court should still affirm the Judgment, because the per se FDCPA violations were time barred, as they were brought beyond the FDCPA's one year statute of limitations and cannot and should not be allowed to be resuscitated as 93A violations, under Massachusetts' longer four year statute of limitations.  While that was not the basis for the District Court's decision, this Court may affirm the District Court's decision "on any independent ground made apparent by the record." InterGen N.V. v. Grina, 344 F.3d 134, 141 (1st Cir.2003); United States v. Nivica, 887 F.2d 1110, 1127 (1st Cir.1989). See United States v. Cabrera-Polo, 376 F.3d 29, 31 (1st Cir. 2004).[4]

The FDCPA provides that "an action to enforce any liability created by this title may be brought . . . within one year from the date on which the violation occurs." 15 U.S.C. §1692k(d).  As the Verified Complaint was not filed until February 3, 2009, any alleged FDCPA violations based on conduct occurring prior

---

[4] MEEB argued this point both in its post-trial brief and in its Rule 59 Motion to Vacate the Judgment.  See, e.g., Addendum 71.  Accordingly, these issues were properly and timely raised in the District Court and may be considered by this Court.  The District Court simply did not reach the issue on MEEB's Rule 59 motion, as it was mooted by the determination that there was no business context or trade and commerce for M.G.L. c. 93A to apply.

to February 3, 2008, were time barred.  As noted by the lower court, the "vast

majority of the testimony and exhibits at trial involve[d] conduct that took place

before February 3, 2008."  Addendum 71.  McDermott did not identify "an

independent chapter 93A violation" at trial, relying solely upon the alleged

FDCPA violations for "per se" M.G.L. c. 93A liability.  Addendum 195.

A "per se" violation of c. 93A cannot be based on a time-barred FDCPA claim; in

such circumstances, there is no underlying violation of the FDCPA which can

serve as the basis for a state consumer protection claim.  Simply put, if the claim is

time barred under the FDCPA, and therefore extinguished as a federal cause of

action, it cannot be resuscitated as a "per se" claim under M.G.L. c. 93A.

Although apparently not yet addressed in this Circuit, there is a growing

body of law which provides that a time-barred violation of a federal statute cannot

serve as a predicate act to support a per se violation of a state consumer protection

act.  In In Re: Mona Lisa v. Celebration, LLC, 472 B.R. 582, 638-639 (Bkrptcy.

M.D. Fla. 2012), the United States Bankruptcy Court in Florida addressed the issue

of whether time-barred conduct which was allegedly violative of the Federal

Interstate Land Sales Full Disclosure Act (ILSFDA) could constitute a "per se"

violation of the Florida Deceptive and Unfair Trade Practices Act  (FDUTPA).

The Court rejected the plaintiffs' argument that the plaintiffs could establish per se

violations of the FDUTPA upon conduct which was allegedly violative of the

ILSFDA, but which was time barred by ILSFDA's statute of limitations. The

Court stated:

> All of the plaintiffs' other FDUTPA claims relying on ILSFDA fail,
> however, because plaintiffs cannot establish a predicate violation
> under ILSFDA. First, no other predicate ILSFDA violation exists
> because plaintiffs' claims either are time-barred or their purchase
> contracts are exempt (footnote omitted). Nonetheless, plaintiffs argue
> that, because the Court in part bases its holding under ILSFDA on
> plaintiffs' claims being time-barred, the Court should, for purposes of
> FDUTPA, look at Mona Lisa's underlying conduct *without regard to
> ILSFDA's statute of limitations* and find a violation of ILSFDA to
> serve as a predicate violation of FDUTPA. In other words, plaintiffs
> argue that conduct that violates ILSFDA's substantive provisions can
> constitute a per se violation of FDUTPA, *even when* that conduct
> occurred beyond the applicable statute of limitations (footnote
> omitted).
>
> The argument to ignore the applicable statute of limitation is
> meritless. The basis for a court's holding under a predicate statute is
> of no significance for purposes of FDUTPA. A party either has or
> does not have a claim under a predicate statute. In this case, the
> buyers' ILSFDA claims are largely time-barred. They do not have a
> claim. The reason is irrelevant; the claim is extinguished for all
> purposes, including serving as a predicate act for FDUTPA. Plaintiffs
> cannot establish a per se violation of FDUTPA based on alleged but
> unfounded violations of ILSFDA.

Id. at 638-639 (emphasis in original).

In Lyons v. Homecomings Financial, LLC, 770 F.Supp.2d 1163, 1167

(W.D. Wash. 2011), the Court dismissed claims brought under the

Washington Consumer Protection Act premised upon per se violations of the

Federal Truth in Lending Act ("TILA") as follows:

> To whatever degree Mr. Lyons attempts to base his [Consumer Protection Act] claim on the allegations related to his TILA claim, the court has already found the TILA claims to be time-barred. Time-barred claims under TILA cannot support a [Consumer Protection Act] claim.

In Jordan v. Paul Financial, LLC, 745 F.Supp.2d 1084, 1098 (N.D. Cal. 2010), it was held that a violation of TILA, which was barred by TILA's one year statute of limitations, could not constitute a predicate or per se violation of California's Unfair Competition Law because there exists no predicate violation if the violation itself is time barred.

In Garcia v. Wachovia Mtg. Corp., 676 F.Supp.2d 895, 911 (C.D. Cal. 2009), the Court held:

> [I]t must be noted as a matter of bookkeeping that to the extent Plaintiff's predicate federal statutory claims under TILA, RESPA and FDCPA are time barred and/or otherwise dismissed, as analyzed above, Plaintiff's state statutory . . . claim predicated on these federal statutory violations likewise must necessarily fail.[5]

In Rosal v. First Federal Bank of California, 671 F.Supp.2d 1111, 1126 (N.D. Cal. 2009), the Court dismissed a California Unfair Competition Law claim premised on a TILA violation as follows:

> The [Unfair Competition Law] incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law (citation omitted). Violation of almost any federal, state, or local law may serve as the basis for [an Unfair

---

[5] In Garcia the FDCPA claim was dismissed because the defendant did not qualify as a debt collector, but the RESPA and TILA claims were dismissed on limitations grounds.

Competition Law] claim (citation omitted).  Where a plaintiff cannot state a claim under the borrowed law, she cannot state [an Unfair Competition Law] claim either.

In Kotek v. Homecomings Financial, LLC, 2009 WL 2057046, *4 (W.D. Wash. 2009), the Court did not allow time barred alleged violations of TILA and RESPA to proceed as a claim under the Washington Consumer Protection Act, holding as follows:

> In the instant case, Plaintiffs initially argue that a violation of either TILA or RESPA is a per se unfair trade practice affecting public interests that gives rise to a Washington [Consumer Protection Act] claim.  However . . ., Plaintiff's TILA and RESPA claims are time barred.  Therefore, Plaintiffs cannot maintain a [Washington Consumer Protection Act] claim on this ground.

In Christopher v. First Mutual Corp., 2008 WL 1815300, *15 (E.D. Pa. 2008), the Court held that:

> Christopher cannot establish a per se violation of the [Pennsylvania Unfair Trade Practices Act] by establishing a violation of RESPA or TILA, because neither the statutory language of RESPA or TILA provides for enforcement under the [state statute], *and because both the RESPA and TILA claims are barred by the statute of limitations* (emphasis added).

This Circuit should similarly hold that time barred FDCPA claims  cannot constitute a predicate violation of the FDCPA which can serve as a "per se" violation of the Massachusetts Consumer Protection Act.  Given that none of the conduct on the part of MEEB prior to February 3, 2008, constituted a violation of the FDCPA, any claims based upon pre-February 3, 2008, conduct cannot serve as

24

"per se" violations of M.G.L. c. 93A.  Accordingly, even if this Court were to find

that MEEB and McDermott were engaged in trade or commerce, this Court should

still affirm the District Court's decision that MEEB's actions did not constitute

violations of M.G.L. c. 93A, albeit on the ground that there was no predicate

FDCPA violation, due to the FDCPA statute of limitations, to ripen into a "per se"

M.G.L. c. 93A violation.

II. **THE PLAINTIFF, HAVING FAILED TO ESTABLISH HIS THEORY OF THE CASE AT TRIAL THAT MEEB INTENTIONALLY ESCALATED ITS FEES WITH REGARD TO ITS REPRESENTATION OF ITS CLIENT, CANNOT ARGUE FOR THE FIRST TIME ON APPEAL THAT MEEB VIOLATED 15 U.S.C. §1692f BY ALLEGEDLY "CHARGING AND COLLECTING EXCESSIVE, REDUNDANT, OR OTHERWISE UNNECESSARY ATTORNEY'S FEES AND COSTS . . . NOT PERMITTED BY MASSACHUSETTS LAW."**

A. **The Plaintiff has waived, by raising for the first time on appeal, his argument that MEEB violated 15 U.S.C §1692f  by "charging and collecting excessive, redundant, or otherwise unnecessary attorney's fees and costs . . . not permitted by Massachusetts law."**

In the Verified Complaint, the Plaintiff alleged that MEEB effected an

"unreasonable, unfair, unlawful, unexplained, and retroactive change in

Pondview's policy for the specific purpose of precipitating a dispute with

McDermott in order to generate legal fees for MEEB to be paid by McDermott

which would be secured by his condominium units," alleging that the conduct

engaged in by MEEB was, inter alia, "oppressive," "extortive," "deceptive,"

25

"misleading," "confusing," "abusive," "deliberate," and "intentional."  App. 58-71.

The Verified Complaint alleged that, as a result of the conduct on the part of

MEEB, the Plaintiff had "incurred substantial legal fees to defend against same,"

had "incurred severe emotional distress," had "lost both of his condominium units

to foreclosure," and had "lost substantial income."  App. 69.  Following trial and

post-judgment motions, the lower court awarded the Plaintiff statutory damages of

$800 based upon three timely violations of the FDCPA.  The court specifically

found that "MEEB was not involved in the decision to impose a $25.00 charge for

delinquent loan payback charges or to change any policy to impose late fees," and

that, "[c]ontrary to plaintiff's view of the facts . . . MEEB was not being deceitful,

purposefully concealing its legal fees or interactions with plaintiff's mortgagees or

unduly or properly focusing on the collection of its attorney's fees to the exclusion

of the interest of its client.  MEEB's motives were based on the desire to represent

its client to the fullest extent possible in a vigorous and aggressive manner."

Addendum 10.  In rejecting the Plaintiff's theory of the case, and repeated

assertions that MEEB acted in bad faith, the lower court specifically found that

"MEEB's conduct was not threatening, oppressive or coercive, or otherwise

unethical or unscrupulous."  Addendum 197.

Having wholly failed to prove his underlying theory of liability at trial, the

Plaintiff now argues for the first time on appeal that MEEB violated the FDCPA

26

by "[c]harging and collecting excessive, redundant, or otherwise unnecessary attorney's fees and costs . . . not permitted by Massachusetts law. . . ."  Despite the fact that the Verified Complaint filed by the Plaintiff contained in excess of 155 alleged violations of the FDCPA, the Plaintiff at no time previously asserted the foregoing argument.  "[I]t is a virtually ironclad rule that a party may not advance for the first time on appeal . . . a new argument. . . ."  Cochran v. Quest Software, Inc., 328 F.3d 1, 11 (1st Cir. 2003).  See also United States v. Slade, 980 F.2d 27, 30 (1st Cir. 1992) ("It is a bedrock rule that when a party has not presented an argument to the district court, [he] may not unveil it in the court of appeals.").  The Plaintiff has waived his argument in this regard.

Additionally, the Plaintiff now attempts to "recast" his theory of liability solely under 15 U.S.C. §1692f, previously having asserted that the alleged underlying conduct violated various other provisions of the FDCPA.  See, e.g., Carman v. CBE Group, Inc., 782 F.Supp.2d 1223, 1234 (D.Kan. 2011) (in sec. 1692f context, "[w]here [p]laintiff fails to allege conduct other than that asserted to violate another FDCPA provision, such will be deemed insufficient under this provision"); Baker v. Allstate Fin. Servs., Inc., 554 F.Supp.2d 945, 953 (D.Minn. 2008) ("Congress enacted Section 1692f to catch conduct not otherwise covered by the FDCPA."); Taylor v. Heath W. Williams, L.L.C., 510 F.Supp.2d 1206, 1217 (N.D.Ga. 2007) ("A complaint will be deemed deficient under [sec. 1692f], if it

'does not identify any misconduct beyond that which Plaintiffs assert violate other provisions of the FDCPA'.") (citation omitted).

## B. The Plaintiff mischaracterizes the underlying claims and burden of proof relative to same.

In addition to presenting a new argument and theory of liability for the first time, the Plaintiff also mischaracterizes the underlying claims and the burden of proof relative to same. The Plaintiff argues for the first time on appeal that "MEEB had the burden of proving the reasonableness of its fees and costs under the fee shifting statute, M.G.L. c. 183A, §6(c)." MEEB, however, did not seek an award of attorney's fees in this case and, other than as to any affirmative defenses, MEEB bore no burden of proof; it is clear that the Plaintiff bore the burden of establishing that MEEB violated the provisions of the FDCPA as to each of the Plaintiff's claimed violations. See Harrington v. CACV of Colorado, LLC, 508 F.Supp.2d 128, 132 (D.Mass. 2007). This is not a case where MEEB, as a prevailing party, sought an award of fees – in point of fact, MEEB made no affirmative claims for relief; as such, the cases cited by the Plaintiff are inapposite. Cf. Society of Jesus of New England v. Boston Landmarks Com'n, 411 Mass. 754, 759, 585 N.E.2d 326 (1992) (prevailing party in sec. 1988 action petitioned for appellate attorney's fees).

28

Moreover, pursuant to M.G.L. c. 183A, §6, Pondview was entitled to assess attorney's fees against the Plaintiff and such fees constituted part of the automatic lien against the unit "enforceable as common expense assessments." The attorney's fees at issue concerned the underlying delinquent common expense assessments and resulting lawsuits; indeed, fees were awarded by the courts in the collection actions tried to conclusion and such awards were preclusive as to the fee issue and could not be re-litigated. Exs. 495 ($18,803), 497 ($14,000). See Enica v. Principi, 544 F.3d 328, 336 (1st Cir. 2008) (issue preclusion "prohibits a party from re-litigating issues that have been previously adjudicated"). There was no request before the lower court to award fees to MEEB and, as such, MEEB bore no burden of proof relative to same.

### C.    M.G.L. c. 183A, §6(c) did not obligate MEEB to send any pre-suit notices to the Plaintiff's mortgagees and MEEB did not act in bad faith or in a manner intended to escalate its legal fees.

M.G.L. c. 183, §6(c) provides:

When any portion of the unit owner's share of the common expenses has been delinquent for at least 60 days subsequent to April 1, 1993, the organization of unit owners shall send a notice stating the amount of the delinquency to the unit owner by certified and first class mail. The organization of unit owners shall also send a notice stating the amount of the delinquency to the first mortgagee by certified and first class mail, provided, that the first mortgagee has informed the organization of unit owners of its name and mailing address. Furthermore, thirty days prior to the filing of an action by the organization of unit owners to enforce its lien for delinquent common expenses, the organization of unit owners shall send a notice stating

its intention to file said action to the first mortgagee by certified and first class mail, provided that the first mortgagee has informed the organization of unit owners of its name and mailing address.

M.G.L. c. 183A, §4(5) provides in pertinent part:

Each mortgagee holding a recorded mortgage upon a unit shall give written notice of the mortgagee's name and mailing address to the organization of unit owners.  Thereafter, each mortgage shall provide written notice to the organization of any changes in said name or address for the purpose of providing notices to the mortgagee under this chapter or under the provisions of the loan document or the condominium documents.  The organization and mortgagees may rely in good faith upon the most recent notice . . . for the purpose of providing notices . . . under this chapter.

In light of the foregoing, it is clear that the 30 day notice is only required to be provided in circumstances where "the first mortgagee has informed the organization of its name and mailing address."  M.G.L. c. 183A, §6(c).  The language of the statute is clear and the Plaintiff's proffered interpretation, i.e., that the 30 day notices are required to be sent to the first mortgagee in all circumstances where the condominium organization is simply aware of the first mortgagee's name and address, would render portions of the statutory language superfluous. See Parisi by Cooney v. Chater, 69 F.3d 614, 617 (1st Cir. 1995) (plain meaning of statutory language must be given effect "unless it would produce an absurd result or one manifestly at odds with the statute's intended effect").  See also Couvertier v. Gil Bonar, 173 F.3d 450, 453 (1st Cir. 1999) ("All words and provisions of statutes are intended to have meaning and are to be given effect, and no

30

construction should be adopted which would render statutory words or phrases meaningless, redundant or superfluous.").  As such, the "provided that" language of the statute must be given effect and, pursuant to its plain meaning, must be interpreted in a manner that provides that notice is required only when the mortgagee has undertaken the affirmative act of providing the organization with its name and address for purposes of the statutory notices.

The Plaintiff presented no evidence at trial that the mortgagees on his condominium units had provided written notice of their name and address under Section 4(5) of the Massachusetts Condominium Act, so as to trigger the 30 day pre-suit notice requirement under Section 6(c).  As such, there was ample basis for the lower court's finding that "Plaintiff's first mortgagees had not informed Pondview of their names and addresses," Addendum 35, and, consequently, that there was no statutory requirement that the notices be sent thirty days prior to suit.

In disregard of the clear statutory language, the Plaintiff asserts, despite the fact that the Plaintiff's "first mortgagees did not apprise Pondview of their names and mailing addresses," that the 30 day notices were nevertheless required and that MEEB's failure to send such notices "was unfair" under 15 U.S.C. §1692f.  "The plain meaning of 'unfair' is 'marked by injustice, partiality, or deception.'"  LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1200 (11th Cir. 2010) (noting that the FDCPA "does not purport to define what is meant by 'unfair').  In

31

rejecting Plaintiff's assertion that MEEB's conduct in this regard was unfair, the lower court correctly noted that "[f]iling suit as a means to collect unpaid condominium fees is an ordinary, usual and expected consequence of not paying required charges" and that it was "also expressly authorized under the Declaration of Trust."  Addendum 144.  See Rizzo v. Pierce & Associates, 351 F.3d 791, 794 (7th Cir. 2003) (finding nothing unfair or unconscionable under Section 1692f in collection of late fees because "the note and mortgage explicitly require payment of all sums which would then be due had no acceleration occurred").  The lower court's factual findings establish that MEEB's conduct was clearly not unfair – as found by the court, "MEEB's pattern of sending the 30 day notice of intent to file suit in and around the time MEEB filed suit was . . . not intended to escalate its legal fees" and "was based on a reading of the statute that the language supports." Addendum 139.

## III.  THE PLAINTIFF FAILED TO ESTABLISH AN INDEPENDENT VIOLATION OF M.G.L. c. 93A, §9 ON THE PART OF MEEB AND THE LOWER COURT PROPERLY DETERMINED THAT MEEB DID NOT COMMIT ANY WILLFUL OR KNOWING VIOLATION OF CHAPTER 93A.

### A.  MEEB enjoyed absolute immunity with regard to the Plaintiff's state law claims pursuant to c. 93A.

An absolute privilege attaches to statements made by an attorney "in the institution or conduct of litigation or in conferences and other communications

preliminary to litigation." Sriberg v. Raymond, 370 Mass. 105, 109, 345 N.E.2d 882 (1976). See Theran v. Rokoff, 413 Mass. 590, 591-592, 602 N.E.2d 191 (1992). The absolute privilege protects an attorney "from any civil liability based thereon," including claims pursuant to M.G.L. c. 93A. Doe v. Nutter, McClennen & Fish, 41 Mass.App.Ct. 137, 141, 668 N.E.2d 1329 (1996). See Blanchette v. Cataldo, 734 F.2d 869, 877 (1st Cir. 1984). "To rule otherwise would make the privilege valueless if an individual would then be subject to liability under a different theory." Doe, 41 Mass.App.Ct. at 141.

The absolute privilege "provides a complete defense even if the offensive statements are uttered maliciously or in bad faith." Id. at 140, citing Correlas v. Viveiros, 410 Mass. 314, 319, 572 N.E.2d 7 (1991). It has been recognized that the absolute immunity provided by the litigation privilege "must be afforded to any act during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . so long as the act has some relation to the proceeding." Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co., 639 So.2d 606, 608 (Fla. 1994). See Rich v. Rich, 2011 WL 3672059 (Mass.Super. 2011) (applying absolute immunity provided by litigation privilege to the contents of "emails and instant messages" disclosed at deposition).

It is clear that the challenged communications and conduct on the part of

MEEB, i.e., the filing of suit and the drafting and wording of complaints, all

occurred within the scope of MEEB's representation of Pondview; additionally, it

cannot be reasonably disputed that all of the challenged conduct related to the

collection efforts.  Visnick v. Caulfield, 73 Mass.App.Ct. 809, 812, 901 N.E.2d

1261 (2009) ("bear some relation to the proceeding").  MEEB enjoyed absolute

immunity with regard to the Plaintiff's state law claims.  See Frazier v. Bailey, 957

F.2d 920, 932 (1st Cir. 1992) ("Because we find that Frazier's allegations stem only

from communications made in the course of litigation, we hold that Dr. Gelinas

enjoys absolute immunity from the state law claims.").

**B.     There was ample support in the record for the court's determination that MEEB did not commit an unfair or deceptive act.**

 "[W]hether a particular set of acts, in their factual setting, is unfair or

deceptive is a question of fact."  Incase Inc. v. Timex Corp., 488 F.3d 46, 57 (1st

Cir. 2007), quoting Schwanbek v. Federal-Mogul Corp., 31 Mass.App.Ct. 390, 578

N.E.2d 789, 803-804 (1991), rev'd on other grounds, 412 Mass. 703, 592 N.E.2d

1289 (1992).  "'[A] practice or act would be unfair under [Chapter 93A] if it is (1)

within the penumbra of a common law, statutory, or other established concept of

unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes

substantial injury to competitors or other business people.'"  Morrison v. Toys "R"

34

Us, Inc., 441 Mass. 451, 806 N.E.2d 388, 392 (2004), quoting Heller Financial v.

Ins. Co. of N.A., 410 Mass. 400, 573 N.E.2d 8, 12-13 (1991).

While the Plaintiff failed to articulate any specific independent Chapter 93A

violation on the part of MEEB at trial, the Plaintiff repeatedly argued the "MEEB

acted in bad faith" and "engaged in intentional and deliberate conduct all designed

to escalate its legal fees."  Addendum 195.  The lower court specifically rejected

the Plaintiff's assertion that the facts supported "an egregious or intentional

escalation of legal fees" and found that "any alleged independent chapter 93A

violation based upon MEEB's bad faith alleged conduct of escalating its legal fees

is not supported by the facts and lacks merit."  Addendum 198.  See Duclersaint v.

Federal National Mortgage Association, 427 Mass. 809, 696 N.E.2d 536, 540

(1998) (noting that "a good faith dispute as to whether money is owed, or

performance of some kind is due, is not the stuff of which a c. 93A claim is

made").  There was ample support in the record for the court's findings in this

regard.

The lower court also found that any alleged "per se c. 93A violations" were

"neither willful nor knowing violations" of M.G.L. c. 93A, §2.  See KPS &

Associates, Inc. v. Designs by FMC, Inc., 318 F.3d 1, 22 (1st Cir. 2003)

(magistrate's factual determination concerning willfulness reviewed for clear

error).  In order to be found to have committed a "willful or knowing" violation of

M.G.C. c. 93A, the defendant's conduct must be subjectively culpable.  <u>Computer Systems Engineering, Inc. v. Quentel Corp.</u>, 571 F.Supp. 1365, 1374 (D.Mass. 1983) (a finding of defendants "culpable state of mind" required); <u>VMark Software v. GMC Corp.</u>, 37 Mass.App.Ct. 610, 623, 642 N.E.2d 587 (1994) ("culpable state of mind" required for imposition of multiple damages).  <u>See also</u> <u>Wasserman v. Agnastopoulos</u>, 22 Mass.App.Ct. 672, 681, 497 N.E.2d 19 (1986) (willful or knowing conduct requires a "more purposeful level of culpability"). The lower court specifically found that "MEEB did not engage in filing frivolous, baseless or meritless suits for an ulterior motive" and that "MEEB's conduct was not threatening, oppressive or coercive or otherwise unethical or unscrupulous." MEEB simply acted to enforce the statutory, and other, rights of its client – both Chapter 183A and the condominium organizational documents allowed MEEB to collect, on behalf of Pondview, the delinquent common expenses, fees, and other costs.  Addendum 197.  <u>See</u> <u>Abraham v. American Home Mortgage Servicing, Inc.</u>, 2012 WL, 4482236, at *4 (D.Mass. 2012) ("[b]ecause Deutsche Bank was entitled to foreclose on Abraham's home, its conduct cannot subject it to liability under Chapter 93A").

The lower court also found that MEEB acted properly in responding to the Plaintiff's Chapter 93A demand letter and clearly did not act in "bad faith" relative to same.  Addendum 198.  The court found that MEEB's response evidenced that

"MEEB fully investigated the facts" and that the response "frame[d] a number of

reasonable . . . legal defenses."  Addendum 199.  As such, there was no basis for a

finding of "bad faith," even if Plaintiff had been able to establish a violation of

Chapter 93A.  See M.G.L. c. 93A, §9(3) (bad faith refusal to grant relief).  See also

Heller v. Silverbranch Const. Corp., 376 Mass. 621, 628, 382 N.E.2d 1065 (1978)

(finding as to "bad faith" is one of fact).

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ *Stephen J. Duggan*

STEPHEN J. DUGGAN, BAR #34652
LYNCH & LYNCH
45 Bristol Drive
South Easton, Massachusetts 02375
(508) 230-2500
sduggan@lynchlynch.com

/s/ *Edmund A. Allcock*

EDMUND A. ALLCOCK, BAR #1048804
MARCUS, ERRICO, EMMER & BROOKS, P.C.
45 Braintree Hill Office Park, Suite 107
Braintree, Massachusetts 02184
(781) 843-5000
eallcock@meeb.com

</div>

Dated: December 23, 2013

## CERTIFICATE OF COMPLIANCE

I certify that:

1)      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,078 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2)      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007 in font size 14 Times New Roman.

/s/ *Stephen J. Duggan*
STEPHEN J. DUGGAN


## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system on December 23, 2013.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.  Service has been made upon:

Philip H. Cahalin, Esquire
85 Exchange Street, Suite 206
Lynn, Massachusetts 01901
(781) 598-3130

/s/ *Stephen J. Duggan*
STEPHEN J. DUGGAN