No. 13-2181
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

WILLIAM MICHAEL MCDERMOTT
Plaintiff - Appellant

v.

MARCUS, ERRICO, EMMER & BROOKS, P.C.
Defendant - Appellee

_____

On Appeal from a Final Judgment and Order under Fed.R.Civ.P. 59(e)
of the United States District Court for the District of Massachusetts

# PLAINTIFF-APPELLANT'S REPLY BRIEF

Philip H. Cahalin, Esq., Bar No. 39203
85 Exchange Street, Suite 206
Lynn, MA 01901
t. 781.598.3130
f. 781.598.3131
pcahalin@cahalinlaw.com

## TABLE OF CONTENTS

A. TABLE OF AUTHORITIES   .  .  .  .  .  .  .  .  .  .  .  .       i

B. ARGUMENT   .  .  .  .  .  .  .  .  .  .  .  .  .       1

    1. Marcus, Errico, Emmer & Brooks, P.C. ("MEEB") has cited no decision which finds an exception to the mandate in M.G.L. c. 93A, §§ 2(a) and 2(c) and 940 C.M.R., § 3.16(4) that violations of federal consumer protection laws are violations of M.G.L. c. 93A, § 2..  .  .  .    1

    2. There is no oddity or unfairness to MEEB to hold it responsible under M.G.L. c. 93A for its actions to collect condominium assessments. It has long been held by federal courts that condominium assessments are debts under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1602-1692p ("FDCPA") and the Federal District Court in Massachusetts and the First Circuit Court of Appeals have long held that violations of the FDCPA are per se violations of M.G.L. c. 93A, § 2.    1

    3. The statute of limitations for claims under M.G.L. c. 93A, § 9 for violations of the FDCPA is four years..  .  .  .  .    3

    4. McDermott's claim that he is entitled to recover the excessive attorney fees and costs which MEEB charged and collected and which he became liable to pay was clearly made from before the time the action was filed and throughout the litigation. MEEB vigorously defended against it and the trial court substantively decided it, albeit incorrectly..  .  .  .  .    8

        a. The complaint and the course of litigation..  .  .  .  .  .  .    8

        b. The trial court substantively, if incorrectly, dealt with McDermott's claim to recover the excessive attorney fees and costs generated by MEEB's violations of the FDCPA. Its findings and rulings were in error.    .  .  .  .  .    13

            i. McDermott suffered economic injury in his becoming liable for MEEB's escalated attorney fees and costs.    .  .  .  .    14

            ii. The complaint adequately pled tortious interference.  .    .    17

            iii. Unjust enrichment is available as an appropriate measure of actual damages under M.G.L. c. 93A, § 9 whenever a violation has harmed a consumer and unjustly enriched the violator..  .    18

.  .

c. McDermott was not precluded by claim or issue preclusion from prosecuting his claim against MEEB that its violations of the FDCPA and M.G.L. c. 93A resulted in his becoming liable for unnecessary, excessive attorney fees and costs.  .   .   .     20

C. CONCLUSION .   .   .   .   .   .   .   .   .   .   .   .   .     26

D. CERTIFICATES   .   .   .   .   .   .   .   .   .   .   .   .   .     27

A. TABLE OF AUTHORITIES

### 1. Case Law

Akar v. Harmon Law Offices, 843 F.Supp.2d 154 (2012)     1

Baldassari v. Public Finance Trust, 369 Mass. 33, 42-43 (1975)     5

Barnes v. Fleet Nat. Bank, NA, 370 F. 3d 164, 176 (1st.Cir.2004)     3

Bartholet v. Reishauer AG (Zürich), 953 F. 2d 1073, 1078 (7th.Cir.1992)     9

Beach v. Ocwen Fed. Bank, 523 U.S. 410, 416, 118 S. Ct. 1408, 140 L. Ed. 2d 566 (1998)     7

Berish v. Bornstein, 437 Mass. 252, 273, 770 N.E.2d 961 (2002)     22

Berman v. Linnane, 424 Mass. 867, 872 n.7, 679 N.E.2d 174  (1997)     16

Blood v. Edgar's, Inc., 36 Mass.App.Ct. 402, 405-406, 632 N.E.2d 419 (1994)     24

Bramlet v. Wilson, 495 F. 2d 714, 716 (CA8 1974))     10

Bowers v. Hardwick, 478 U.S. 186, 201, 106 S. Ct. 2841, 92 L. Ed. 2d 140 (1986)     10

Caron v. Charles E. Maxwell, P.C., 48 F.Supp.2d 932 (D.Ariz.1999)     2

Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)     9,11

Cloverleaf Realty of New York v. Town of Wawayanda, 572 F. 3d 93, 95 (2nd.Cir.2009)     7

Day v. Kerkorian, 61 Mass. App. Ct. 804, 812, 814 N.E.2d 745 (2004)     25

Educadores Puertorriquenos v. Hernandez, 367 F. 3d 61, 66
(1st.Cir.2004)                                                                                                      9

Fine v. Huygens, DiMella, Shaffer & Associates, 57 Mass. App. Ct.
397, 404-405, 783 N.E.2d 842 (App. Ct. 2003)                                                      5

French v. Corporate Receivables, Inc., 489 F.3d 402, 403 n.1 (1st .Cir.
2007)                                                                                                                    3

FTC v. Check Investors, Inc., 502 F. 3d 159, 166-167 (3rd.Cir.2007)          19

FTC v. Direct Marketing Concepts, Inc., 648 F.Supp.2d 202, 212
(D.Mass.2009)                                                                                                   19

FTC v. Direct Marketing Concepts, Inc., 624 F.3d 1, 14-15
(1st.Cir.2010)                                                                                                  19

Garcia v. Wachovia Mtg. Corp., 676 F. Supp. 2d 895 (C.D. Cal. 2009).        6

Garner v. Kansas, No. 98-1274, 1999 WL 262100 (E.D.La.1999)                  2

Gordon v. Hardware Mut. Cas. Co. 361, Mass. 582, 281 N.E.2d 573
(1972)                                                                                                                21

Gouin v. Gouin, 249 F. Supp. 2d. 62, 74 (D.Mass.2003)                              18

Guaranty Trust Co. v. York, 326 US 99, 109-110, 65 S. Ct. 1464, 89 L.
Ed. 2079 (1945)                                                                                                  4

Harrington v. CACV of Colorado, 508 F.Supp.2d 128, 138-140
(D.Mass.2007)                                                                                                 3,6

Harrison v. NetCentric Corp., 433 Mass. 465, 744 N.E.2d 622, 632
(2001)                                                                                                                17

Hatch v. Trail King Industries, Inc., 699 F.3d 38, 43 (1st Cir. 2012)           21

Heller v. Silverbranch Construction Corp., 382 N.E.2d 1065, 376 Mass.
621, 626 (1978)                                                                                                27

Hermes Automation Technology v. Hyundai Elec. Ind. Co., LTD, 915 F.
2d 739, 751 (1st.Cir.1990).                                                                             21

Hershenow v. Enterprise Rent-A-Car Company Of Boston, Inc., 445
Mass. 790, 779-800, 840 N.E.2d 526 (2006                                                 13,14

In Re: Mona Lisa v. Celebration, LLC, 472 B.R. 582, 638-639 (Bkrptcy.
M.D. Fla.                                                                                                            6

Keller v. O'Brien, 425 Mass. 774, 778, 683 N.E.2d 1026 (1997)                  10

Ladick v. Gemert, 146 F.3d 1205 (10th Cir.1998)    .    .    .    .    .    .    .     2

Leardi v. Brown, 394 Mass. 151, 159, 474 N.E.2d 1094 (1985)     14

Levin v. Berley, 728 F. 2d 551, 555 (1st.Cir.1984)     4

Loigman v. Kings Landing Condominium Ass'n, 324 N.J.Super. 97, 734
A.2d 367 (Ch. Div.1999)     2

Maguire v. Citicorp Retail Services, Inc., 147 F. 3d 232, 235
(2nd.Cir.1998)     24

Martin v. Ring, 401 Mass. 59, 62, 514 N.E.2d 663 (1987)     23

Martin v. Sands, 62 F. Supp. 2d 196, 201 (D. Mass.1999)     3

Masciarelli v. Richard J. Boudreau & Ass. 529 F. Supp. 2d 183, 186-
187 (D.Mass.2007)     3

Miguel v. Country Funding Corp., 309 F. 3d 1161, 1163 (9th.Cir.2002)     6

National Merchandising Corp. v. Leyden, 370 Mass. 425, 433, 348
N.E.2d 771  (1976)     20

Newman v. Boehm, Pearlstein & Bright, Ltd., 119 F.3d 477, 481 (7th
Cir. 1997)  .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .     2,24

O'Donnell v. Boggs, 611 F. 3d 50, 554 (1st.Cir.2010)     17

Pettit v. Retrieval Creditors Bureau, Inc., 211 F.3d 1057, 1059 (7th
Cir.2000)     24

Prizio v. City of Revere, 629 F. Supp. 538, 539 (D.Mass.1986)     21

Reid v. Ayers, 531 SE 2d 231, 234 (NC, 2000)     2

Rex Lumber Co. v. Acton Block Co., 29 Mass. App. Ct. 510, 521-522,
562 N.E.2d 845  (1990)     16

Romea v. Heiberger & Assocs., 163 F.3d 111 (2d Cir.1998)     2

Saladini v. Righellis, 426 Mass. 231, 235-236,  687 N.E.2d 1224 (1997);     16

Salamon v. Terra, 394 Mass. 857, 859 (1985)     10

Sarvis v. Boston Safe Deposit and Trust Co., 47 Mass. App. 86, 99, 711
N.E.2d 911 (1999)     23

Slaney v. Westwood Auto, Inc., 366 Mass. 688, 700, 322 N.E.2d 768
(1975)     19

Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 504, 121 S. Ct. 1021, 149 L. Ed. 2d 32 (2001) .......................................................... 7

Shafir v. Steele, 431 Mass. 365, 369-371, 727 N.E.2d 1140 (2000) ......... 18

Som v. Daniels Law Offices, 573 F. Supp. 2d. 349 (D.Mass.2008) ............ 3

Stark v. Advanced Magnetics, Inc., 50 Mass. App. Ct. 226, 234-235, 736 N.E.2d 434 (2000) ............................................................................. 5

Tagliente v. Himmer, 949 F. 2d 1, 6 (1st.Cir.1991) .................................. 5

Taylor v. Mount Oak Manor Homeowners Ass'n, 11 F.Supp.2d 753 (D.Md.1998) ............................................................................................ 2

Thies v. Law Offices of William A. Wyman, 969 F.Supp. 604 (S.D.Cal.1997) ......................................................................................... 2

Wadlington v. Credit Acceptance Corp., 76 F. 3d 103, 108 (6th.Cir.1996) ........................................................................................... 24

## 2.  Statutes and Regulations

12 U.S.C. §§ 4301-4313    .    .    .              .    .    .    .    .    .    .    .    .    .    3

15 U.S.C. § 53(b) ................................................................................... 19

15 U.S.C. 1601, et seq. ............................................................................ 6

15 U.S.C. 1635(f) ................................................................................. 6,7

15 U.S.C. §§ 1602-1692p        1,2,3,4,6,7,8,9,12,13,14,17,18,19,20,22,23,
"(FDCPA")                                                                   24,25,26

15 U.S.C. § 1692a ................................................................................ 24

15 U.S.C. § 1692f ............................................................................. 15,16

15 U.S.C. § 1692k ............................................................................. 4,6,7

15 U.S.C. § 1692n ................................................................................. 4

M.G.L. c. 93A              2,3,4,5,6,9,13,14,16,20,22,23,24,25,26

M.G.L. c. 93A, § 2 ............................................................................ 1,2,3

M.G.L. c. 93A, § 9 ................................................................. 3,18,19,22,25

M.G.L. c. 93A, § 9(1) ........................................................................... 19

M.G.L. c. 93A, § 9(8)                                                21

M.G.L. c. 183A                                                       16

M.G.L. c. 183A, § 6                                                  24

M.G.L. c. 183A, § 7                                                  24

M.G.L. c. 260, § 5A                                                 4,5


940 C.M.R., § 3.16(4)                                                13

### 3.  Other Authorities

St. 1975, c. 432, § 2   .   .   .   .                                 5

Restatement (Second) of Judgments § 49                              25

Restatement (Second) of Torts, § 51                                 20

Restatement (Second) of Torts, § 766A                               18

B.  ARGUMENT

**1.  Marcus, Errico, Emmer & Brooks, P.C. ("MEEB") has cited no decision which finds an exception to the mandate in M.G.L. c. 93A,  §§ 2(a) and 2(c) and 940 C.M.R., § 3.16(4) that violations of federal consumer protection laws are violations of M.G.L. c. 93A, § 2.**

M.G.L. c. 93A, §§ 2(b) and 2(c) and 940 C.M.R. § 3.16(4) expressly state that violations of federal consumer protection laws are violations of M.G.L. c. 93A, § 2.  There are no exceptions stated or implied.  MEEB has cited no decision finding an exception.  The only decision it cited which involved a federal consumer protection statute, Akar v. Harmon Law Offices, 843 F.Supp.2d 154 (2012), never mentioned the mandate at Sections 2(b) and 2(c) or 940 C.M.R. § 3.16(4).  It is clear that the court in Akar never considered it, much less intended to find an exception to it.  That is evident by a review of the docket in Akar[1] which shows that that decision resulted from an opposed motion to dismiss that never mentioned the issue.[2]

**2.  There is no oddity or unfairness to MEEB to hold it responsible under M.G.L. c. 93A  for its actions to collect condominium assessments.  It has long been held by federal courts that condominium assessments are debts under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1602-1692p ("FDCPA") and the Federal District Court in Massachusetts and the First Circuit Court**

1  See the docket for Fed.Dist.Ct. No. 1:10-cv-10539-NMG and the motion to dismiss and memorandum in support at Docket Nos. 44 and 45.

2  The docket in Akar shows that MEEB is well aware that the issue of an exception from the mandate was not addressed to or decided by the court in Akar because a MEEB attorney represented the party who filed the motion.

- 1 -

**of Appeals have long held that violations of the FDCPA are <u>per se</u> violations of M.G.L. c. 93A, § 2.**

There is nothing "odd" or unfair about holding an attorney debt collector liable under M.G.L. c. 93A for its violations of the FDCPA in collecting condominium association assessments.  Virtually every federal court which has dealt with the issue has held such assessments to be debts under the FDCPA.  See <u>Newman v. Boehm, Pearlstein & Bright, Ltd.</u>, 119 F.3d 477, 481 (7th Cir. 1997).  "Since [Newman], nearly every court, state or federal, that has considered the issue has concluded that association dues, assessments, and rent are properly classified as debt. See, e.g., <u>Romea v. Heiberger & Assocs.</u>, 163 F.3d 111 (2d Cir.1998); <u>Ladick v. Gemert</u>, 146 F.3d 1205 (10th Cir.1998); <u>Garner v. Kansas, No. 98-1274</u>, 1999 WL 262100 (E.D.La.1999); <u>Caron v. Charles E. Maxwell, P.C.</u>, 48 F.Supp.2d 932 (D.Ariz.1999); <u>Taylor v. Mount Oak Manor Homeowners Ass'n</u>, 11 F.Supp.2d 753 (D.Md.1998); <u>Thies v. Law Offices of William A. Wyman</u>, 969 F.Supp. 604 (S.D.Cal.1997); <u>Loigman v. Kings Landing Condominium Ass'n</u>, 324 N.J.Super. 97, 734 A.2d 367 (Ch. Div.1999)." <u>Reid v. Ayers</u>, 531 SE 2d 231, 234 (NC, 2000) .  M.G.L. c. 93A, §§ 2(b) and 2(c) mandate that the federal court construction of the FDCPA guides the construction of the terms "trade or commerce" under Section 2(a) and it has long been held in the First Circuit that violations of federal consumer protection laws in general, and the FDCPA in

particular, are per se violations of M.G.L. c. 93A.  French v. Corporate

Receivables, Inc., 489 F.3d 402, 403 n.1 (1st .Cir. 2007) ("A violation of the

FDCPA constitutes a per se violation of ch. 93A ").

> As stated above, TISA [the Truth in Savings Act, 12 U.S.C. §§ 4301-
> 4313] is a consumer protection statute and therefore is doubtless within
> the scope of 940 C.M.R. 3.16(4). See 12 U.S.C. § 4301(a)(listing "the
> ability of consumers to make informed decisions regarding deposit
> accounts" as a reason for enacting TISA). Thus, because we hold that
> Fleet violated TISA, we must also hold that Fleet's violation of TISA
> constitutes a per se violation of Mass. Gen. Laws ch. 93A, § 2.[

Barnes v. Fleet Nat. Bank, NA, 370 F. 3d 164, 176 (1st.Cir.2004).  See Martin v.

Sands, 62 F. Supp. 2D 196, 201 (D. Mass.1999) (attorney debt collector liable

under G.L. c. 93A for violations of FDCPA);  Harrington v. CACV of Colorado,

508 F.Supp.2d 128, 138-140 (D.Mass.2007) (attorney debt collector liable under

G.L. c. 93A for violations of the FDCPA which involve litigation activity);

Masciarelli v. Richard J. Boudreau & Ass. 529 F. Supp. 2D 183, 186-187

(D.Mass.2007) (attorney debt collector liable under G.L. c. 93A for violations of

the FDCPA); Som v. Daniels Law Offices, 573 F. Supp. 2d. 349 (D.Mass.2008)

(attorney debt collector liable under G.L. c. 93A for violations of the FDCPA).

MEEB can claim no unfairness or surprise that its collection activity is subject to

M.G.L. c. 93A.

**3.  The statute of limitations for claims under M.G.L. c. 93A, § 9 for**

**violations of the FDCPA is four years.**

The longer four year statute of limitations for violations of M.G.L. c. 93A[3], is not preempted by the shorter one year statute of limitations period under the FDCPA,[4] for the reasons stated at pages 71-74 of the trial court's November 20, 2012 Memorandum and Order ("Order").  Addendum to Plaintiff-Appellant's Brief ("A.") 71-74.  Essentially, because a longer statute of limitations is more favorable to consumers than a shorter one, the longer state statute of limitations for asserting claims under M.G.L. c. 93A is not preempted by the shorter federal statute of limitations for asserting FDCPA claims.  15 U.S.C. § 1692n; Id.

The applicable law to determine the statute of limitations for claims under M.G.L. c. 93A is Massachusetts state law.  Guaranty Trust Co. v. York, 326 US 99, 109-110, 65 S. Ct. 1464, 89 L. Ed. 2079 (1945).  Massachusetts is clear that a claim under G.L. c. 93A is not affected by the expiration of the statute of limitations of the underlying claims.

The legislative history of G.L. c. 93A and its construction by the Massachusetts state courts since 1975, when a separate statute of limitations for claims under G.L. c. 93A was enacted, make it clear that the statute of limitations for G.L. c. 93A claims is four years irrespective of the statute of limitations of the underlying

---

3  M.G.L. c. 260, § 5A, Levin v. Berley, 728 F. 2d 551, 555 (1st.Cir.1984),
4  15 U.S.C. § 1692k.

claim.  St. 1975, c. 432, § 2, adding Section 5A to M.G.L. c. 260.   Prior to 1975,

the limitations for claims under M.G.L. c. 93A was determined by looking to the

limitations of the underlying claims.  Baldassari v. Public Finance Trust, 369 Mass.

33, 42-43 (1975) (statute of limitations for M.G.L. c. 93A claim was two year

statute applicable to claims for tort and contract seeking to recover for personal

injury).  Since 1975, the Massachusetts state courts have consistently determined

that the statute of limitations for claims under G.L. c. 93A is four years irrespective

of the statutes of limitations applicable to an underlying claim.

> We reject the contention that a c. 93A claim necessarily fails because the
> underlying claim upon which it depends has been dismissed as not timely filed.
> (Citation omitted).  The fact that an underlying claim is dismissed for lack of
> timeliness does not require dismissal of the c. 93A claim, as to which a longer
> limitations period may be applicable, as is the case here. Compare Palermo v.
> Brennan, 41 Mass. App. Ct. 503, 504 n.2 (1996). The c.93A claim need only be
> dismissed if, under c. 93A's four-year limitations period and the accrual date
> applicable to the particular c. 93A claim, it was not timely filed.

Fine v. Huygens, DiMella, Shaffer & Associates, 57 Mass. App. Ct. 397, 404-405,

783 N.E.2d 842 (App. Ct. 2003); (distinguishes between timeliness of underlying

claims under statutes of limitations and timeliness under statutes of repose); see

Stark v. Advanced Magnetics, Inc., 50 Mass. App. Ct. 226, 234-235, 736 N.E.2d

434 (2000) (M.G.L. c. 93A claim was timely although underlying tort claims had

been dismissed as time barred); Tagliente v. Himmer, 949 F. 2d 1, 6 (1st.Cir.1991)

(M.G.L. c. 93A claim was timely although underlying tort claim of fraudulent

misrepresentation was not); <u>Harrington v. CACV of Colrado, LLC</u>, 508 F.

Supp.2d. 128, 133 (D.Mass.2007) (FDCPA claim  dismissed as time barred under

FDCPA one year statute of limitations must nonetheless be considered under G.L.

c. 93A because violations of the FDCPA are <u>per se</u> violations of G.L. c. 93A).

   MEEB cited no decision where a state law claim based upon violations of the

FDCPA was dismissed because it was untimely under 15 U.S.C. § 1692k.[5]  The

federal claim under consideration in most of the decisions MEEB cited was for

rescission under the Truth in Lending Act, 15 U.S.C. 1601, et seq. ("TILA"),[6]

which is governed by what has been described as a statute of repose, 15 U.S.C.

1635(f), as opposed to a statute of limitations.  <u>Miguel v. Country Funding Corp.</u>,

309 F. 3d 1161, 1163 (9th.Cir.2002).  The Supreme Court has expressly noted the

distinction relative to the right or rescission under 15 U.S.C. 1635(f).

> The terms of a typical statute of limitation provide that a cause of action
> may or must be brought within a certain period of time. . . . Section
> 1635(f), however, takes us beyond any question whether it limits more
> than the time for bringing a suit, by governing the life of the underlying

---

5  The only decision cited by MEEB which involved an FDCPA claim was <u>Garcia v. Wachovia Mtg. Corp.</u>, 676 F. Supp. 2d 895 (C.D. Cal. 2009).  The FDCPA claim in that case was dismissed because the defendant was not a debt collector, not because the statute of limitations of an underlying claim had expired. <u>Garcia</u>, 676 F. Supp. 2d at 910.

6  Five of the six decisions cited by MEEB in its argument involved TILA claims. The only one that didn't was the decision by the Bankruptcy Court in <u>In Re: Mona Lisa v. Celebration, LLC</u>, 472 B.R. 582, 638-639 (Bkrptcy. M.D. Fla. 2012), which cited no Florida state decision, or any other authority for its conclusion.

right as well. The subsection says nothing in terms of bringing an action
but instead provides that the 'right of rescission [under the Act] shall
expire' at the end of the time period. It talks not of a suit's
commencement but of a right's duration, which it addresses in terms so
straightforward as to render any limitation on the time for seeking a
remedy superfluous.

Beach v. Ocwen Fed. Bank, 523 U.S. 410, 416, 118 S. Ct. 1408, 140 L. Ed. 2d 566

(1998).  Unlike the limit on the duration on the right stated in 15 U.S.C. 1635(f),

the statute of limitations for FDCPA claims is a classically "typical statute of

limitations."

An action to enforce any liability created by this subchapter may be
brought in any appropriate United States district court without regard to
the amount in controversy, or in any other court of competent
jurisdiction, within one year from the date on which the violation occurs.

15 U.S.C. 1692k(d).  It governs only the time in which an action may be brought to

enforce a right.  It does not terminate the "underlying right."  See Cloverleaf Realty

of New York v. Town of Wawayanda, 572 F. 3d 93, 95 (2nd.Cir.2009) quoting

Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 504, 121 S. Ct. 1021,

149 L. Ed. 2d 32 (2001) ("the Supreme Court has recognized [that] 'the traditional

rule is that expiration of the applicable statute of limitations merely bars the

remedy and does not extinguish the substantive right, so that dismissal on that

ground does not have claim-preclusive effect in other jurisdictions with longer,

unexpired limitations periods.'").  Massachusetts state law is very clear that the

- 7 -

expiration of time under this kind of statute of limitations does not limit the time in which a claim under M.G.L. c. 93A may be pursued.

**4.  McDermott's claim that he is entitled to recover the excessive attorney fees and costs which MEEB charged and collected and which he became liable to pay was clearly made from before the time the action was filed and throughout the litigation.  MEEB  vigorously defended against it and the trial court substantively decided it, albeit incorrectly.**

McDermott was clear from the beginning that one of his claims against MEEB for economic damages was to recover the attorney fees and costs he became liable to pay which resulted from MEEB's violations of the FDCPA and M.G.L. c. 93A. MEEB vigorously defended against this claim from the beginning, presenting numerous defenses which it has effectively waived by not raising in this appeal. The trial court clearly understood this to be McDermott's claim and dealt with it substantively in its decision.

**a.  The complaint and the course of litigation.**

The M.G.L. c. 93A demand letter McDermott sent to MEEB prior to filing suit stated in part:  "Your actions demonstrated a deliberate and relentless intent to create unnecessary and grossly excessive legal fees and costs,"  Exhibits ("Ex.") 455, and "your unfair and deceptive actions have caused him to become responsible for legal fees to you in excess of $57,000." Ex. 456.  The subsequent Complaint stated in part: "To date, Marcus, Errico has collected approximately

$40,000 to $45,000 in legal fees from McDermott's mortgagees and has a judgment for an additional $14,000 in legal fees not yet collected which were directly caused by its . . . relentless, egregious, unfair, deceptive, false, misleading, oppressive, and abusive violations of the FDCPA".  Appendix ("App."), 69, ¶ 66.  The Complaint demanded that MEEB be ordered to compensate McDermott for "his incursion of substantial legal fees . . . to Marcus, Errico", App.  70 and for  "his incurring substantial liabilities to Pondview[7]  and his mortgagees."  App. 71 and 72.

In view of the foregoing, MEEB can not reasonably assert that it failed to understand from before the suit was filed that McDermott claimed that its attorney fees and costs were excessive and resulted from its violations of the FDCPA and M.G.L. c. 93A or that McDermott sought, at least as an alternative measure of his damages, to recover those fees and costs,.  The complaint adequately served its purpose of providing MEEB with "'fair notice of what [McDermott's] claim is and the grounds upon which it rests.' "  Educadores Puertorriquenos v. Hernandez, 367 F. 3d 61, 66 (1st.Cir.2004), quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  That was all that was required.  The grounds for unjust enrichment and tortious interference were sufficiently alleged in the Complaint to put MEEB on notice of same.  McDermott was not required to allege any particular legal theory of recovery. Bartholet v. Reishauer AG (Zürich), 953 F. 2d 1073, 1078

---

7  Pondview Condominium Association ("Pondview").

(7th.Cir.1992) ("[T]he complaint need not identify a legal theory, and specifying an incorrect theory is not fatal."); accord <u>Bowers v. Hardwick,</u> 478 U.S. 186, 201, 106 S. Ct. 2841, 92 L. Ed. 2d 140 (1986) (It is a well-settled principle of law that "a complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory," quoting <u>Bramlet v. Wilson</u>, 495 F. 2d 714, 716 (CA8 1974).  That McDermott alleged a number of alternative theories of economic damages is also irrelevant.  Fed.R.Civ.P. 8(a)(3) (a demand for relief "may include relief in the alternative or different types of relief.").

McDermott's right to recover the attorney fees and costs under the principles of unjust enrichment was adequately pled in the Complaint.  "Restitution is an equitable remedy by which a person who has been unjustly enriched at the expense of another is required to repay the injured party."  <u>Keller v. O'Brien</u>, 425 Mass. 774, 778, 683 N.E.2d 1026 (1997) quoting <u>Salamon v. Terra</u>, 394 Mass. 857, 859 (1985).  McDermott sufficiently pled that MEEB had been unjustly enriched at his expense, i.e., that it had charged and collected unnecessary and excessive attorney fees and costs which he became liable to pay.  MEEB can not reasonably claim that it failed to understand that.

- 10 -

Furthermore, the issue of McDermott's right to recover the unnecessary, excessive attorney fees he became liable to pay was extensively fleshed out during the course of the litigation and MEEB vigorously defended against the claim. "The simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. Conley v. Gibson, supra, 355 U.S. at 47-48, 78 S. Ct. 99, 2 L. Ed. 2d 80. MEEB raised several defenses in its Answer to McDermott's claim that its fees and costs were unnecessary and excessive: res judicata,[8] collateral estoppel,[9] and that "[t]he subject debts, including attorney's fees, were permitted by law and MEEB was authorized to collect same."[10] MEEB opposed the discovery of its invoices "the issue as to legal fees has been previously litigated and determined and, as such, the bills concerning same are not relevant in this litigation."[11] MEEB repeated its res judicata defense in the pretrial memorandum,[12] and stated five additional defenses to McDermott's claim to recover those fees and costs as the measure of his economic damages: one, that McDermott failed to plead

---

8   Docket Nos. 7 and 19, p. 9, ¶ 3.  All references to docket entries are to the docket entries in the trial court, United States District Court for the District of Massachusetts, No.  09cv10159-MBB, unless otherwise noted.

9  Docket Nos. 7 and 19, p. 9, ¶ 4.

10 Docket Nos. 7 and 19, p. 10, ¶ 15.

11 Docket No. 12, p.  3.

12 Docket No. 22, p. 8.

"unjust enrichment either as a claim or theory of recovery;" two, that "unjust enrichment is unavailable" "[w]here the Plaintiff has an adequate remedy at law;" three, that unjust enrichment was unavailable because McDermott "paid none of the attorney's fees relative to the delinquent condominium common expense assessments [and therefore] conferred no benefit upon MEEB;" four, that disgorgement of profits was not appropriate because McDermott had not "asserted a claim for intentional interference with contractual relations . . . or the existence of a special or fiduciary relationship between the [himself] and MEEB[13];" and five, that "fees paid to MEEB by third parties do not constitute 'actual damages' to the Plaintiff under either the FDCPA or c. 93A."[14]  MEEB repeated these defenses in its Rule 52(c) motion filed at the close of McDermott's case.[15]  It also filed an in limine motion asserting its res judicata defense[16] and filed a trial brief which repeated these defenses except for its res judicata defense.[17]

McDermott also provided extensive argument by motion, opposition, and his trial brief that he was entitled to recover MEEB's attorney fees and costs under the principles of unjust enrichment.  See Docket Nos.  40; 40-1; 48, pp. 7-11; and 60,

[13]The trial court relied on this defense in part in denying McDermott relief for the fees and costs.  A. 194.

[14]Docket No. 22, pp. 9-10.

[15]Docket No. 46, pp. 1-2, ¶¶ 2 and 6-9.

[16]Docket No. 23

[17] Docket No. 61, ¶¶ 51, and 57-59.   It did not repeat its arguments concerning res judicata.  See Docket No. 61 and A. 2, n. 1.

pp. 30-32.  See also his opening argument which made it clear that recovery of the

fees and costs was the principle economic damages he sought.  A. 82.

> **b.  The trial court substantively dealt with McDermott's claim to recover the excessive attorney fees and costs generated by MEEB's violations of the FDCPA.  Its findings and rulings were in error.**

The trial court found that the gist of McDermott's claim was "that MEEB

engaged in collection efforts that violated the FDCPA with the intention to escalate

its legal fees."  A. 65.  It analyzed McDermott's claim for damages under M.G.L. c.

93A, A. 179-195, in consideration of the principle articulated in Hershenow v.

Enterprise Rent-A-Car Company of Boston, Inc., 445 Mass. 790, 840 N.E.2d 526

(2006), that the violations must "cause[] a loss."  A. 177.[18]  It concluded that

McDermott's recovery of MEEB's attorney fees and costs on the basis of unjust

enrichment was inappropriate because the "plaintiff suffered only a minimal

economic injury causally connected to the FDCPA violations [and] . . . [a]lthough

plaintiff asserts that MEEB tortuously interfered with plaintiff's relationship with

Pondview (Docket Entry # 60, p. 33), plaintiff never pled an interference with

contractual relations claim."  A. 194.[19]  The court's conclusion that McDermott

[18]Rejecting other limitations urged by MEEB on per se M.G.L. c. 93A liability for violations of the FDCPA, such as litigation immunity.  A. 174-177.  As the trial court noted, "The SJC has yet to create an exception to per se chapter 93A liability for a federal consumer protection statute encompassed by regulation 3.16(4) based on the litigation privilege."  A. 176-177.
[19]The court also found that there was no fiduciary relation between McDermott

- 13 -

suffered "only a minimal ecomomic injury causally connected to the FDCPA violations" was in error. He clearly suffered a cognizable injury under M.G.L. c. 93A in the form of his liability for the "escalated" attorney fees and costs caused by MEEB's violations of the FDCPA. Moreover, any economic injury which resulted from MEEB's violations was recoverable, even if it were minimal. The court's finding that McDermott had failed to plead tortious interference was also in error. However, as he made clear in his various memoranda, his right to recover for MEEB's unjust enrichment under M.G.L. c. 93A was not dependent on his alleging or prevailing on any underlying theory of liability. Restitution is clearly authorized under M.G.L. c. 93A by the right to seek equitable relief stated in Subsection 9(1).

### i. McDermott suffered economic injury in his becoming liable for MEEB's escalated attorney fees and costs.

The incursion of liability for unnecessary, excessive attorney fees and costs is actual damages under M.G.L. c. 93A. "[I]n the wake of the 1979 amendment to G. L. c. 93A, § 9, a claim of 'injury' now encompassed 'the invasion of any legally protected interest of another.'" Hershenow v. Enterprise Rent-A-Car Company of Boston, Inc., 445 Mass. 790, 779-800, 840 N.E.2d 526 (2006), quoting Leardi v. Brown, 394 Mass. 151, 159, 474 N.E.2d 1094 (1985). McDermott's legally and Pondview or MEEB which McDermott concedes.

protected interest was his right to be free from an obligation to pay unnecessary, excessive attorney fees and costs.  He also had a right to have his obligations to his mortgagees unburdened by such fees and cost.  The obligation was the actual damage, the measure of which was the amount of the obligation.

With respect to the multiple lawsuits, the trial court found that MEEB sought "significant amounts of duplicate legal fees in violation of section 1692d,"  A. 190. However, it found that McDermott incurred no economic  damages as a result of the duplicate legal fees.  "Plaintiff, however, failed in his burden to show that the inclusion of the multiple legal fees in the June 2007 unit 105 suit caused the September 2007 foreclosure and loss of property."  A. 191.  The court's clear error was its failure to find that the duplicate fees themselves were the economic injury suffered by McDermott.

With respect to the pre-suit notices, McDermott had argued that irrespective of whether MEEB had acted in good faith, it was liable for any excessive fees and costs "caused by its failure to comply with a law intended to limit litigation costs because such failure was  . . . an 'unfair or unconscionable means to collect or attempt to collect any debt' in violation of  15 U.S.C. § 1692f."  Docket No. 60, p. 28.  The trial court made no finding whether MEEB was obligated to send the notices and found that even if were it had acted in good faith when it failed to send

them in a timely manner.  A. 137-139.  It further found that the failure to send the

notices in compliance with the statute would not be unfair under 15 U.S.C. § 1692f

because the "cost of preparing and filing the complaint" which would or could

have been avoided had MEEB done so "does not increase the fees to such an extent

that the failure to send the notice earlier was unconscionable or unfair." A. 144.

Those costs, the court reasoned, were "an ordinary, usual and expected

consequence of not paying the required charges . . . [and] expressly authorized."

Id.  This was clear error.   Attorney fees and costs which would have been avoided

are by definition unnecessary.  Unnecessary attorney fees and costs are not the

ordinary, usual and expected consequence of not paying condominium assessments

and are not and can not be authorized under M.G.L. c. 183A or the Declaration of

Trust because they are not lawful under Massachusetts state law.  Berman v.

Linnane, 424 Mass. 867, 872 n.7, 679 N.E.2d 174  (1997); Saladini v. Righellis,

426 Mass. 231, 235-236,  687 N.E.2d 1224 (1997); Rex Lumber Co. v. Acton

Block Co., 29 Mass. App. Ct. 510, 521-522, 562 N.E.2d 845  (1990) (excessive

attorneys fees engendered by excessive litigation impairs the administration of

justice).  Again, the critical error made by the trial court was its failure to find that

the attorney fees which would have been avoided was the measure of McDermott's

injury under M.G.L. c. 93A.

### ii.  The complaint adequately pled tortious interference.

The complaint stated that "[MEEB] has collected approximately $40,000 to

$45,000 in legal fees from McDermott's mortgagees . . . which were directly

caused by its . . . relentless, egregious, unfair, deceptive, false, misleading,

oppressive, and abusive violations of the FDCPA," App., 69, ¶ 66, and sought

damages for "his incurring substantial liabilities to Pondview and his mortgagees."

App. 71 and 72.  Those allegations were sufficient to give MEEB fair notice that

McDermott had a claim against it for tortious interference.

> The elements of tortious interference with contractual relations,
> common to both theories of the tort under Massachusetts law, are as
> follows:
>
>> [T]he plaintiff must prove that (1) he had a contract with a third
>> party; (2) the defendant knowingly interfered with that contract
>> [by inhibiting the third party's or the plaintiff's performance
>> thereof, depending on the theory]; (3) the defendant's interference,
>> in addition to being intentional, was improper in motive or means;
>> and (4) the plaintiff was harmed by the defendant's actions.

O'Donnell v. Boggs, 611 F. 3d 50, 554 (1st.Cir.2010) quoting Harrison v.

NetCentric Corp., 433 Mass. 465, 744 N.E.2d 622, 632 (2001).  "One who

intentionally and improperly interferes with the performance of a contract (except a

contract to marry) between another and a third person, by preventing the other

from performing the contract or causing his performance to be more expensive or

burdensome, is subject to liability to the other for the pecuniary loss resulting to

him."  Restatement (Second) of Torts, § 766A;  Shafir v. Steele, 431 Mass. 365,

369-371, 727 N.E.2d 1140 (2000); Gouin v. Gouin, 249 F. Supp. 2d. 62, 74

(D.Mass.2003)

The contracts alleged were the mortgages McDermott had with his mortgagees.

The legal fees MEEB collected from the mortgagees interfered with those contracts

because it caused McDermott's performance to be more expensive and

budensome.[20]  The interference was alleged to be improper because it was caused

by MEEB's violations of the FDCPA.  And it was alleged that McDermott was

harmed by the interference because it resulted in his incurring substantial liability

to his mortgagees.  Therefore, all the elements of a claim for tortious interference

were sufficiently pled to give MEEB fair notice of the claim and the grounds on

which it rested.

### iii.  Unjust enrichment is available as an appropriate measure of actual damages under M.G.L. c. 93A, § 9 whenever a violation has harmed a consumer and unjustly enriched the violator.

As McDermott argued in his opposition to MEEB's Rule 52(c) motion, Docket

No. 46, unjust enrichment is available "under G.L. c. 93A for violations of the

FDCPA irrespective of the underlying claims."  Docket No. 48, p. 8.  As he argued

---

[20]The trial court found that the mortgagees added their payments to McDermott's
   mortgages.  A. 188-189

- 18 -

in his Trial Brief, Docket No. 60, the grant of the right to consumers to obtain

equitable relief in M.G.L. c. 93A, § 9(1) evinces the Legislature's intent that

consumers' right to recover damages by restitution under M.G.L. c. 93A, § 9 is no

less than the right granted by similar language in the Federal Trade Commission

Act ("FTCA") to the Federal Trade Commission's ("FTC") to obtain such relief..

> It is clear that the grant of relief available to consumers under G.L. c.
> 93A, § 9(1) is at least as broad as that given to the Federal Trade
> Commission ("FTC") under 15 U.S.C. § 53(b) which the federal courts
> have consistently construed to provide the right to relief in the form of
> disgorgement of profits for violations of federal consumer protection
> statutes, including the FDCPA.   FTC v. Check Investors, Inc., 502 F. 3d
> 159, 166-167 (3rd.Cir.2007); FTC v. Direct Marketing Concepts, Inc.,
> 648 F.Supp.2d 202, 212 (D.Mass.2009), affirmed FTC v. Direct
> Marketing Concepts, Inc., 624 F.3d 1, 14-15 (1st.Cir.2010).

Docket No., p. 31.

M.G.L. c. 93A, § 9(1) also makes it clear that McDermott had a right to seek

restitution irrespective of the availability of any adequate legal remedy.  "It has

long been the law that where equity jurisdiction is specifically conferred by statute,

it is no objection that the plaintiff also has a plain, adequate, and complete remedy

at law."  Slaney v. Westwood Auto, Inc., 366 Mass. 688, 700, 322 N.E.2d 768

(1975).

Unjust enrichment under M.G.L. c. 93A, § 9(1) is appropriate in the present

case because MEEB should not be allowed to speculate that its profits would

exceed McDermott's provable loss.

> The reasons that disgorgement [of profits] is particularly appropriate in
> [instances of 'business torts'] is the same for applying it in the consumer
> unfair and deceptive action. . . . Need and reason combine to support this
> avenue of recovery, because it will often be difficult to satisfy strictly a
> conventional tort formula, and because an intending tortfeasor should not
> be prompted to speculate that his profits might exceed the injured party's
> losses, thus encouraging commission of the tort. Nor should such a
> defendant be heard to say that the unjust enrichment remedy is unfairly
> "punitive" because the plaintiff may recover more than his exact loss,
> when use of a tort measure might allow the defendant to retain some part
> of his ill gotten gains. Here, as in other contexts, a plaintiff in proper
> cases may be permitted alternative routes of recovery.

National Merchandising Corp. v. Leyden, 370 Mass. 425, 433, 348 N.E.2d 771

(1976).

The measure of damages for recovery under unjust enrichment is "not less than

the market value of the benefits wrongfully obtained."  Restatement (Second) of

Torts, § 51(2).  Only a reasonable approximation of the gain is required in order to

recover.  "Residual risk of uncertainty in calculating net profit is assigned to the

wrongdoer."  Restatement (Second) of Torts, § 51(4)(d).

**c.  McDermott was not precluded by claim or issue preclusion from
prosecuting his claim against MEEB that its violations of the FDCPA and
M.G.L. c. 93A resulted in his becoming liable for unnecessary, excessive
attorney fees and costs.**

There were judgments entered in two of the nine state court actions filed by

MEEB against McDermott, one of which was entered into evidence.  Ex. 382.  The

trial court addressed the issue within the context of McDermott's motion in limine

to exclude evidence of res judicata, Docket 30, and MEEB's opposition, Docket

No. 37.  A. 199-201.  The trial court found that the "Defendant's 12 requests in the

opposition are moot because this court independently made similar findings."  A.

200-201. Although MEEB has waived its res judicata defense by not raising it in

this appeal, McDermott addresses it briefly below.

Massachusetts state law governs the preclusive effect of Massachusetts state

court judgments.  <u>Prizio v. City of Revere</u>, 629 F. Supp. 538, 539 (D.Mass.1986).[21]

> [R]ecovering or failing to recover an award of damages or other relief in
> any . . . judicial proceeding, except proceedings authorized by this
> section, by any person entitled to bring an action under this section, shall
> not constitute a bar to, or limitation upon relief authorized by this
> section."

M.G.L. c. 93A, § 9(8).  It is generally recognized that Subsection 9(8) was added

by the Massachusetts Legislature in response to the Supreme Judicial Court's

decision in  <u>Gordon v. Hardware Mut. Cas. Co</u>. 361, Mass. 582, 281 N.E.2d 573

(1972) "which required the exhaustion of administrative remedies as a condition of

a § 9 claim."  <u>Hatch v. Trail King Industries, Inc.</u>, 699 F.3d 38, 43 (1st Cir. 2012).

---

21 "Massachusetts preclusion rules are narrower than those imposed by federal
   law."  <u>Hermes Automation Technology v. Hyundai Elec. Ind. Co., LTD</u>, 915 F.
   2d 739, 751 (1st.Cir.1990).

However, the plain meaning of the text of Subsection 9(8) makes it clear that it is not limited to situations involving the exhaustion of administrative remedies. The statute does not state that failing to exhaust administrative remedies does not bar or limit relief under Section 9.  It states that recovering or failing to recover relief in any judicial proceeding not authorized under Section 9 does not bar or limit such relief.  It can not be assumed that the Legislature was utterly inept at expressing its intent.  Regardless of the genesis of Subsection 9, tt is clear that the Legislature intended to limit the preclusive effect on claims under Section 9 of decisions in prior judicial proceedings in which considerations of rights and liabilities under Section 9 played no part.  This broad purpose is consistent with the fact that M.G.L. c. 93A created rights and obligations which are otherwise unavailable under the common law or other statutes.

> Both this court and the Supreme Court have consistently held that consumer protection statutes created new substantive rights by making conduct unlawful which was not previously unlawful under the common law or any prior statute. The statutory language is not dependent on traditional tort or contract law concepts for its definition.

Heller v. Silverbranch Construction Corp., 382 N.E.2d 1065, 376 Mass. 621, 626 (1978).  It is inconsistent with broad remedial purposes of M.G.L. c. 93A to allow adjudication of the substantive rights and obligations created by M.G.L. c. 93A and the FDCPA to be precluded by decisions made in proceedings in which those

rights and obligations were not considered. There was no evidence that

McDermott's rights or MEEB's obligations under M.G.L. c. 93A, § 9 or the

FDCPA were at issue in the state court proceedings.[22] Therefore, the decisions in

those actions can not bar or limit the relief McDermott seeks under M.G.L. c. 93A

in the above captioned action.

    Moreover, McDermott's claim that MEEB's violations of the FDCPA resulted

in his becoming liable for escalated attorney fees is not barred under the ordinary

principles of res judicata because MEEB was not a party or in privity with

Pondview and the issues decided in the state court actions are not identical to the

issues in the above captioned action nor did McDermott have a full and fair

opportunity to litigate the issues in question. Martin v. Ring, 401 Mass. 59, 62,

514 N.E.2d 663 (1987) (defensive collateral estoppel available only where "there is

an identity of issues" and the "party to the original action . . . had a full and fair

opportunity to litigate the issues in question")[23].

    McDermott could not defend against Pondview's claim against him or file a

counterclaim against Pondview which asserted that MEEB's violations of the

FDCPA and M.G.L. c. 93A escalated the fees. MEEB was not a party and

[22]MEEB had the burden of proof relative to its res judicata defense. Sarvis v.
    Boston Safe Deposit and Trust Co., 47 Mass. App. 86, 99, 711 N.E.2d 911
    (1999)
[23]The trial court found that "Defendant relies on issue preclusion as opposed to
    claim preclusion." A. 200, n. 168.

Pondview, as a creditor,[24] was not liable to McDermott under the FDCPA directly or vicariously for MEEB's violations,[25] not could McDermott have asserted a claim against it under M.G.L. c. 93A.  Berish v. Bornstein, 437 Mass. 252, 273, 770 N.E.2d 961 (2002).

Moreover, even if Pondview could have been held vicariously liable for MEEB's violations, McDermott would have been prohibited from asserting such a claim by M.G.L. c. 183A, § 7 which precludes unit owners from challenging the lawfulness of assessments in actions brought by associations to collect those assessments.  Blood v. Edgar's, Inc., 36 Mass.App.Ct. 402, 405-406, 632 N.E.2d 419 (1994).

Finally, even if McDermott could have held Pondview vicariously liable for MEEB's violations and was not precluded from asserting such a claim by M.G.L. c. 183A, § 7, he would have had to have asserted the claim subject to Pondview's right under M.G.L. c. 183A, § 6, to assess to him its attorney fees and costs for the costs of the litigation.  Requiring a consumer to assert his claims under such circumstances is clearly contrary to the purpose and intent of the FDCPA and

_____

24 15 U.S.C. § 1692a(4), see Newman v. Boehm, Pearlstein & Bright, Ltd., supra, 119 F.3d at 481

25 Maguire v. Citicorp Retail Services, Inc., 147 F. 3d 232, 235  (2nd.Cir.1998); Wadlington v. Credit Acceptance Corp., 76 F. 3d 103, 108 (6th.Cir.1996); accord Pettit v. Retrieval Creditors Bureau, Inc., 211 F.3d 1057, 1059 (7th Cir.2000).

M.G.L. c. 93A, § 9.

The only way that McDermott could have raised in the state court proceedings his claims against MEEB for its violations of the FDCPA and M.G.L. c. 93A, would have been to file a third party complaint against MEEB. By no other means could he have effectively asserted the substantive rights and obligations created by those laws for his benefit or his right to recover attorney fees and costs and multiple damages thereunder. Massachusetts did not require him to file such a complaint.

> We do not believe that the doctrine of claim preclusion requires that a party defendant implead a third party or suffer preclusion with respect to claims that he otherwise has against that third party. This is nothing more than a form of mandatory joinder, and we are unaware of such a requirement within either the canons of res judicata or the rules of procedure. We observe that "[a] judgment against one person liable for a loss does not terminate a claim that the injured party may have against another person who may be liable therefor." Restatement (Second) of Judgments § 49.

Day v. Kerkorian, 61 Mass. App. Ct. 804, 812, 814 N.E.2d 745 (2004). Moreover, his doing so would have have created an intolerable circularity and confusion in the litigation. His claims against MEEB for its violations of the FDCPA and M.G.L. c. 93A were predominately for the manner in which it conducted the litigation itself.

In short, McDermott did not and was not required to prosecute in the state court

his claim that MEEB's violations of the FDCPA and M.G.L. c. 93A escalated the attorney fees and costs he became liable to pay.  It is not unfair to MEEB to hold it accountable for those fees and costs.  MEEB had the power to avoid such liability by not violating the FDCPA when it prosecuted those actions.  It shouldn't be allowed to avoid such liability by claiming that the issue has already been decided where it wasn't litigated and couldn't have been effectively litigated.  To allow it to do so would eviscerate the protection provided to consumers and the obligations imposed on debt collectors by the FDCPA and M.G.L. c. 93A and be contrary to the broad remedial purpose of both laws.

## C.  CONCLUSION

Wherefore, McDermott respectfully requests the relief he requested in his Plaintiff-Appellant's Brief.

Respectfully submitted,
WILLIAM M. MCDERMOTT, PLAINTIFF-APPELLANT
By his attorney,

/s/ Philip H. Cahalin
Philip H. Cahalin, Esq., Bar No. 39203
85 Exchange Street, Suite 206
Lynn, MA 01901
t. 781.598.3130
f. 781.598.3131
pcahalin@cahalinlaw.com

D.  CERTIFICATES

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I, Philip H. Cahalin, hereby certify that

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because it contains 6,667 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface, Times New Roman, with a font size of 14, using LibreOffice 3.4.6.

/s/ Philip H. Cahalin
Philip H. Cahalin, Esq., Bar No. 39203
Dated: January 6, 2014

CERTIFICATE OF SERVICE OF BRIEF, ADDENDUM,
APPENDIX, AND EXHIBITS

I, Philip Cahalin, hereby certify that the Plaintiff-Appellant's Reply Brief filed through the ECF system will be sent electronically to the registered participants, Stephen J. Duggan, Esq. and Edmund A. Allcock, Esq., as identified on the Notice of Electronic Filing (NEF) this 6th day of January, 2014.

/s/ Philip H. Cahalin
Philip H. Cahalin, Esq., Bar No. 39203